ESTATE OF MCCLEAR: McCLEAR, Appellant, vs. ROOT, Administrator, Respondent.

*September 15—October 3, 1911.*

*Trusts and trustees: Sale by trustee to himself: Remedies of* cestui que trust: *Accounting for profits: Laches: Harmless error.*

1. A sale of trust property by the trustee of an express trust to himself is voidable at the election of the *cestui que trust;* and neither good faith nor the payment of ample consideration will support the sale in such a case where the trustee acts both for himself and for his *cestui que trust.*
2. The *cestui que trust* in such case may elect to disaffirm the sale and recover the property sold, or he may affirm the sale, hold the trustee to his purchase, and require him to account for his profits made in the transaction.
3. Where by sec. 3918, Stats. (1898), a *cestui que trust* in such a case is barred from recovering the land sold (more than five years having elapsed since the sale thereof), he may still elect to affirm the sale and require the trustee to account for profits.

4. As between the trustee of an express trust and his *cestui que trust* the right to such an accounting will not be barred by laches of the latter unless there has been an unequivocal denial or repudiation of the trust by the trustee which was known or ought to have been known to him.  ٮ

5. The *cestui que trust* is entitled to an accounting only for profits actually made by the trustee, and where no profits were actually made a judgment denying the right to an accounting, though legally erroneous, will not be reversed.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge.  *Affirmed.*

This is a contest over the settlement of the final account of an administrator with the will annexed.  The evidence is not preserved by bill of exceptions, and the material facts as found by the circuit court are substantially as follows: Thomas McClear died March 1, 1890, testate, leaving a widow and several children, the appellant in this proceeding being the residuary legatee.  His estate consisted of ninety acres of farm land in Green county and a small amount of personal property.  *James Root* was appointed administrator with the will annexed April 17, 1900, and duly qualified.  In January, 1891, fifty acres of the farm, including the homestead, was set off to the widow as her dower, and she occupied the same until her death in 1907.  In February, 1891, license was granted to the administrator to sell the remaining forty acres of the farm to pay debts and expenses of administration, and said forty acres were appraised at $600.  No bidders appeared at the sale, and *Mr. Root* reported that fact to the county judge and stated that he would take the land himself if ·one Richards would advance him the money.  The judge told him he could not buy it himself, but that he could convey the land to Richards and Richards could then convey it to him.  This transaction was carried out as suggested, and the administrator reported to the court that he had sold the land at private sale to Mr. Richards for $600.  On March 19, 1891, the county court confirmed the sale, and the

administrator used nearly all of the $600 in paying debts, and filed an account March 8, 1892, purporting to be a complete account of his administration, and showing a balance of $29.88 in his hands. The county judge found the account correct and allowed $5 for the fees of a guardian *ad litem* and $10 for copies of papers, leaving a final balance in the hands of the administrator of $14.88. No notice of the hearing of this account was given, and no formal order made allowing it or discharging the administrator. The appellant, *Robert J. McClear,* became of age in 1892, and resided with his mother on her dower lands adjoining and has lived there ever since. The administrator in making this sale to himself acted in entire good faith and paid full value for the land. He went into possession immediately on confirmation of the sale and greatly improved the same by draining, fencing, ditching, removing brush, and otherwise improving the same, thereby putting it in condition for farming, and thus added $700 to the value thereof by his improvements during the ten years he occupied it. In 1901 he sold the land for $1,600. The appellant knew that *Root* was in possession, claiming to be the owner, knew of the improvements, knew of the sale in 1901, and at no time made any objection or claimed any rights in the land or its proceeds. There is no finding that the appellant had any knowledge of the arrangement by which the respondent became in fact the purchaser at his own sale, nor is there any finding that he knew anything about the filing or approval of the account in 1892. The rental value of the forty acres for the ten years during which *Root* held it is $450. In December, 1908, *Root* made application to the county court for license to sell the homestead forty to pay legacies alleged to be unpaid, and notice of the hearing of the petition was given. In March, 1909, on application of the appellant, the county court ordered the administrator to make and file his final account; and the administrator filed a request that the account filed in March, 1892,

be adopted and considered his final account. Thereupon the appellant filed objection to certain items and claimed that the administrator should be charged with the rents and profits of the forty acres during his possession, as well as with $1,000 of the proceeds of the sale thereof.

The circuit court found that the order confirming the sale made March 19, 1891, was final and conclusive, and not subject to attack; and that the appellant was estopped by his laches from attacking the sale, as well as from requiring the administrator to account for any profits made by him. Judgment in accordance with these findings was entered, and the residuary legatee appeals.

For the appellant there were briefs by *Clancey & Loverud,* and oral argument by *E. K. Loverud.*

*J. D. Dunwiddie,* for the respondent.

WINSLOW, C. J. The administrator was the trustee of an express trust. Neither under the common law nor under the statute could he make a valid and binding sale of the trust property to himself. *In re Taylor Orphan Asylum,* 36 Wis. 534; sec. 3914, Stats. (1898). Neither good faith nor the payment of an ample consideration will avail to support the sale in such a case where the trustee acts both for himself and for his *cestui que trust. Shaw v. Crandon State Bank,* 145 Wis. 639, 129 N. W. 794. The sale is, however, not absolutely void, but voidable at the election of the *cestui que trust. Melms v. Pabst B. Co.* 93 Wis. 153, 66 N. W. 518.

These general propositions are not open to serious question. It may be granted at once that the appellant is barred from attacking the sale by the provisions of sec. 3918, Stats. (1898), which prohibit the bringing of any action to recover real estate sold at such a sale unless commenced within five years next after the sale. That fact, however, does not prevent a recovery of any profits which the trustee may have made from his dealing with the trust property. The *cestui*

*que trust* may elect between two courses: he may disaffirm the sale and recover the property sold; or he may affirm the sale, hold the trustee to his purchase, and require the trustee to account for his profits made in the transaction. *In re Taylor Orphan Asylum, supra;* 28 Cyc. 1027, subd. *b.* It is manifest, therefore, that the mere fact the *cestui que trust* is barred from bringing an action to set aside the sale and recover the property is not necessarily decisive of the question whether he can require the trustee to account for profits made. Sec. 3918 does not pretend to cut off the right to such an accounting. There may doubtless be circumstances in special cases which would rightly cut off the right to an accounting for profits made by a trustee in his dealing with the trust property, although this court has been very slow to allow any statute of limitations or any bar in analogy thereto to defeat the execution of an express trust. There can be no such bar as between the trustee of an express trust and his *cestui que trust,* unless there has been an unequivocal denial or repudiation of the trust. *Fawcett v. Fawcett,* 85 Wis. 332, 55 N. W. 405; *Boyd v. Mut. F. Asso.* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171.

We fail to find facts in the present case showing any denial or repudiation of the trust brought home to the knowledge of the appellant. It is not found that he ever knew that the sale was in fact made to the administrator himself. The sale was reported to the court to have been made to Mr. Richards for $600, and so far as the findings show the appellant was never informed to the contrary. It is true that the administrator took possession and operated the farm for ten years to the knowledge of the appellant, but this is entirely consistent with an actual sale in good faith to Richards and a subsequent purchase in good faith by the administrator. Moreover, it does not appear that the appellant ever had any knowledge, either actual or constructive, of the account which was filed in 1892, or of the approval thereof by the county court. We

are not required to say what the effect would be upon the appellant's rights if he were shown to have had full knowledge of the transaction itself and of the account rendered by the administrator and the approval thereof. It is sufficient to say that on the facts found by the court we are unable to find that unequivocal denial or repudiation of the trust by the trustee which was known or ought to have been known to the *cestui que trust* which must exist to form the foundation of laches which bars his right to insist on an accounting for the profits made by the trustee in his dealing with the trust property. So we conclude that the court was wrong in holding that because the sale could not be attacked no accounting for profits made by the trustee could be had, and equally wrong in holding that the appellant was estopped by laches from insisting on an accounting.

But the *cestui que trust* is only entitled to an accounting for profits actually made by the trustee. He has elected to ratify the transfer and he has received the full value for the property at the time it was sold. If the trustee made no profits an accounting would be futile. From the facts found it seems to us certain that on any permissible method of accounting there were no profits. Under the findings the administrator paid every cent the land was worth at the time it was sold, and the money at once went to the benefit of the estate and relieved it of its debts. No claim could have been made at the time of the sale or at any time prior to the resale that the administrator had actually made any profit. But if it be conceded (which is not decided) that the correct method would be to state the account with annual rests down to the present time, it is quite certain that there would be no balance of profits against the administrator.

Having made the purchase in the best of faith and without bad motive of any kind, he would clearly be entitled to credit for his original payment of $600 with legal interest, as well as credit for his improvements to the extent to which they

added to the value of the land, which is found to be $700 and credit for taxes paid. The land clearly appears to have been unimproved, if not actually wild and unfit for cultivation, when purchased. The improvements were doubtless made during the first years of the respondent's occupation, while the rents and profits must have been largely earned during the later years. If an account be stated crediting the respondent with his original payment of $600, also with his improvements (dividing the amount thereof between the first five years), also with a reasonable sum for taxes annually, making annual rests and subtracting the annual rents and profits, allowing interest at the legal rate on each annual balance, it will be found that the aggregate exceeds somewhat the total amount received by the respondent when he sold the land in 1901. On any theory, therefore, the respondent made no profit on the transaction for which in equity he should be required to account.

This being the fact, it would be useless to reverse the judgment merely because it is based on an erroneous legal conclusion.

*By the Court.*—Judgment affirmed.

BARNES, J., took no part.