No. 24,500.

CITIZENS NATIONAL BANK OF CHICKASHA, *Appellant,* v. A. E. LEHR-
LING, doing business as the STANDARD LIVE STOCK COMMISSION
COMPANY, *Appellee.*

No. 24,505.

CITIZENS NATIONAL BANK OF CHICKASHA, *Appellee,* v. THE
CUDAHY PACKING COMPANY, *Appellant.*

· No. 24,513.

CITIZENS NATIONAL BANK OF CHICKASHA, *Appellee,* v. SEYMOUR
CLARK and ERNEST B. SITTON, doing business as THE PAUGH
COMMISSION COMPANY, *Appellants.*

SYLLABUS BY THE COURT.

1. PRACTICE—*Error Not to Find on Question of Fact Material to the Result.*
It is error not to find on a question material to the result, on which ques-
tion there is evidence in an action tried by a court without a jury, where
findings of fact and conclusions of law are made under an order. of court
in conformity with an oral stipulation made in open court at the com-
mencement of the trial, and where a finding on such question is specifically
requested.   .

2. SALES—*Torts—Wrongful Sale of Another's Cattle—Neglect of Owner to
Notify Purchaser—Estoppel.* An owner of cattle placed them with another
to pasture.  The latter without authority sold a portion of them.  The
owner received information of the sale, went to the purchaser, and from
him learned the facts, but did not notify him that the cattle belonged to
the owner until five months later.  The seller agreed to pay the owner for
the cattle sold and they continued their friendly and business relations
thereafter.  There was evidence which tended to prove that when the
owner learned from the purchaser that the cattle were sold the seller was
solvent and that when the purchaser was notified of the ownership of the
cattle the seller was insolvent.  *Held,* That an estoppel exists against the
owner and his assignee in an action by the latter against the purchaser to
recover the value of the cattle if the seller was solvent when the owner
learned from the purchaser that the cattle had ·been sold and was insolvent
when the owner notified the purchaser concerning the ownership of the
cattle.

3. SAME.  Under the circumstances outlined in the second paragraph of this
syllabus, neither the owner nor his assignee can recover the value of the
cattle where the owner directly or indirectly received from the purchaser
the value of the cattle sold.

Appeals from Sedgwick district court, division No. 2; THORNTON W. SAR-
GENT, judge.  Opinion filed May 12, 1923.  Case No. 24,500 Affirmed.  Cases
No. 24,505 and No. 24,513 Reversed.

35—113 KAN.

*C. H. Brooks, Willard Brooks,* and *C. G. Myers,* all of Wichita, for the Standard Commission Company, The Cudahy Packing Company, and the Paugh Commission Company.

*Dempster O. Potts, R. G. Bennett,* and *W. P. Campbell,* all of Wichita, for the Citizens National Bank of Chickasha.

The opinion of the court was delivered by

MARSHALL, J.: In these actions, the plaintiff seeks to recover the value of cattle owned by Athel Williams, and wrongfully sold by E. P. Slade through or to the defendants, live-stock commission merchants or packing houses, the claims for which were assigned by Athel Williams to the plaintiff before the actions were commenced. Judgment was rendered in favor of the defendant in case No. 24,500, from which the plaintiff appeals; and judgments were rendered in favor of the plaintiffs in cases No. 24,505 and No. 24,513 from which the defendants appeal.

The actions were tried together by the court without a jury; and, under an order based on an oral stipulation made in open court at the commencement of the trial, special findings of fact and conclusions of law were made in each case. Findings of fact, common to all three of the cases, established that Athel Williams owned 272 head of cattle on which there was a chattel mortgage held by the Interstate National Bank of Kansas City for $25,862.19 and that he delivered the 272 head of cattle to E. P. Slade under a written contract dated May 1, 1920, by which Slade agreed to pasture the cattle at $8 each for the season ending September 1, 1920, and to return all the cattle at the latter date. Other findings showed that on or about July 16, 1920, Slade, without authority from Williams, shipped twelve head of the cattle to the Zook & Zook Commission Company at Wichita, by whom the cattle were sold to the Cudahy Packing Company for $1,526.22 net; that on or about June 20, 1920, in the same manner, Slade shipped four head of the cattle to the Paugh Commission Company at Wichita, by whom the cattle were sold to Cudahy Packing Company for $376.06 net; and that on or about July 15, 1920, Slade in the same manner shipped eleven head of the cattle to the Standard Livestock Commission Company at Wichita, by whom they were sold for $1,290.74 net. In each case, the court also found that neither the commission merchants nor the purchasers knew that the cattle were being sold without authority; that Williams had no knowledge that Slade was pre-

tending to act as his agent in the sale of the cattle or was selling them, until shortly thereafter; that when he learned of the sale of the cattle, Williams went to Wichita to inquire concerning them and ascertained that Slade had sold them as above outlined, but Williams did not then state to either commission merchants or purchasers that he owned the cattle or that Slade did not have authority to sell them; that the friendly relations which existed between Williams and Slade before the making of the contract continued until after the pasture season of 1920 had terminated; and that Williams did not inform the commission merchants or the purchasers that the cattle were his until in December, 1920. There was evidence which tended to prove that at the time Williams went to Wichita to inquire concerning the cattle, Slade was solvent; and at that time could have paid all his debts and had some property left, but on December 1, thereafter, Slade had become insolvent because his property had depreciated in value until it did not sell for enough to pay the mortgages on it.

The defendants in each case requested that the following special findings be made by the court:

"On December 1, 1920, Slade's financial condition and condition as to ability to raise money to pay debts was substantially inferior to his condition on August 1, 1920, or within the month of August.

"If the defendants had had timely warning of the plaintiff's claims sued upon they would have taken active steps to protect themselves as against Slade, and would have been in better position to do so than they were on or about December 1, 1920, or subsequently."

Those findings were not made. The matters contained in them had been pleaded by the defendants.

The actions were commenced on January 11, 1921. The facts found as above outlined and the request for additional findings as above set out are all that are necessary to consider in cases No. 24,505 and No. 24,513.

1. It is contended that "the plaintiff by the conduct of its assignor, Williams, after July 16, 1920, is estopped to disaffirm the sales in question as against any of the defendants." To support this contention, defendants argue that the failure of Williams to notify them of the true situation with reference to the ownership of the cattle and his delay in making known his claims to the defendants misled them to their detriment, for the reason that when the inquiry was made concerning the cattle, Slade was solvent and

the defendants could have compelled payment by Slade for the wrong he did to them, but that when Williams notified them of the true situation Slade had become insolvent and payment could not be compelled.

21 C. J. 1150, in discussing silence as an element of estoppel, says:

"Mere silence of itself will not raise an estoppel. To make the silence of a party operate as an estoppel the circumstances must have been such as to render it his duty to speak, and there must also be an opportunity to speak. And it is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth, and have been misled into doing that which he would not have done but for such silence. Nevertheless, an estoppel may arise from silence as well as words. Inaction or silence may under some circumstances amount to a misrepresentation and concealment of the true facts, so as to raise an equitable estoppel. When the silence is of such a character and under such circumstances that it would become a fraud upon the other party to permit the party who has kept silent to deny what his silence has induced the other to believe and act upon, it will operate as an estoppel."

It is unnecessary to cite other authorities.

Williams gave Slade the physical possession and control of the cattle. When Williams learned what had been done, it was his duty to notify the defendants that the cattle sold belonged to him. Instead of doing as he should have done, he negotiated with Slade for payment for the cattle sold and did not notify the defendants of the truth until the opportunity for them to protect themselves had passed, if the evidence concerning that matter were true. The court did not find concerning the solvency of Slade at the time Williams learned of the sale, nor at the time Williams made known to the defendants his claims against them. The request specifically made for such findings was not complied with. Those findings were material, and they should have been made. It was error not to make them.

2. The following elements of estoppel were established by the evidence and found by the court: First, that Williams gave Slade the physical possession and control of the cattle; second, that when Williams received information that the cattle had been sold, he went to Wichita and learned the facts, but did not notify the defendants that the cattle were his; third, that Slade promised to pay Williams for the cattle. If the evidence had established, and the court had found, that Slade was solvent when Williams learned his cattle had been sold, and that, when he notified the defendants

that the cattle were his, Slade was insolvent, other elements of estoppel would have been established. If Williams had notified the defendants when he learned that the cattle had been sold, the defendants could have proceeded against Slade while he was solvent, and might have recovered from him the damages sustained by them. Assuming that the matters indicated by the evidence were found by the court, the elements of estoppel above outlined must be disregarded if the judgments in No. 24,505 and No. 24,513 are affirmed. Those elements of estoppel cannot be disregarded. Williams was at fault; the defendants were without fault. Assuming such matters to be true, Williams could not recover from the defendants; and the plaintiff, being an assignee of Williams, could not recover. For the error of the court in not finding concerning the solvency of Slade, the judgments in No. 24,505 and No. 24,513 must be reversed.

The defendants argue that—

"The plaintiff's said assignor by his conduct after said date, ratified the sales in question, all of which having been made by Slade as the ostensible and pretended agent, although without actual authority, of the true owner."

The facts on which this argument is based are the same as those on which the defendants claim an estoppel against Williams and his assignee, the plaintiff; and it is not necessary to further discuss them.

3. What has been said concerning cases No. 24,505 and No. 24,513, would apply to case No. 24,500 if no other proposition were involved, but in the last case, the court also found that Slade instructed the Standard Commission Company to deposit the sum of $1,088 to his credit, which was done; that the $1,088 was paid to the Stockgrowers National Bank of Pawhuska, for the balance of pasture rent due Slade from Williams for the cattle, that rent having been assigned by Slade to the Stockgrowers National Bank; that the remainder of the proceeds from the sale of the cattle, $227.35, and an additional $202.74, making $430.09, were paid by the Standard Livestock Commission Company to the Interstate National Bank which held the chattel mortgage on the cattle; and that credit was given Williams on his indebtedness to the bank for $430.09. These findings show that Williams indirectly received all the money and more arising from the sale of his cattle by Slade to the Standard Livestock Commission Company.

There is another question not raised by the pleadings, not presented to the trial court, and not argued in the briefs in this court,

and that question is the assignability of these claims and the right of the plaintiff to maintain these actions; but because that question has not been presented anywhere, it is not discussed.

The judgment in case No. 24,500 is affirmed, and the judgments in cases No. 24,505 and No. 24,513 are reversed and remanded with directions to the trial court to proceed in accordance with this opinion.