Wells v. Albers.

No. 27,096.

MYRON H. WELLS, *Appellant*, v. J. H. ALBERS, GEORGE C. ROSS, FRANK WALTERSCHEID and THE MERCHANTS PRODUCE COMPANY, *Appellees*.

SYLLABUS BY THE COURT.

SALES—*Right to Repudiate—Election to Affirm—Waiver of Delay.* A contract of August 31, 1920, for the sale of a car of honey provided for shipment in ten days. The car was not loaded until October 9. In the meantime, communications were had between the seller in California and brokers in Wichita tending to support the theory that the purchasers had not abandoned the contract. On October 11 seller wired its agent at Wichita that car was loaded and requested bank guarantee of draft be sent. The same day purchasers told seller's agent they were instructing their bank to wire guarantee payment of the draft. Afterwards, on October 15, when the car of honey had gone well forward on its way toward destination, purchasers wired seller attaching new conditions as elements of purchase. *Held,* the shipment was made under the contract of August 31, the purchasers waived the delay.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 5, 1927. Reversed.

*C. H. Brooks, Willard Brooks* and *Howard T. Fleeson,* all of Wichita, for the appellant.

*H. W. Hart, Glenn Porter, Enos E. Hook* and *Edward H. Jamison,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one for damages for breach of contract to purchase a car of honey. The plaintiff, who was the assignee of the California Honey Producers Coöperative Exchange, was defeated and appeals.

The facts were substantially these:

On August 31, 1920, the Ridnour Brokerage Company, of Wichita, as agent for the honey exchange, received from the defendants an order for a car of honey. On September 1, 1920, the honey exchange mailed to Ridnour for execution a form of contract based upon the order. It was received in due time, signed and mailed back September 8. It bore date of August 31, provided for payment at a named price per case and provided for "prompt" shipment, which meant shipment in "ten full business days." The ship-

ment was loaded October 9. However, in the meantime, there were various communications between the honey exchange and Ridnour. Among others, on September 10, the honey exchange wrote that as soon as information was available it would telegraph when the car would go forward. September 24, the honey exchange asked if the customer would want as large a car as 1,800 cases. On September 27, Ridnour answered, "Customers are pounding us on the back for delivery," and at the same time wired that the big car was entirely satisfactory. The honey exchange answered that it was doing its best. On October 6 the honey exchange wired that the car would load Friday (October 8). On October 11, it wired that the car was loaded, and requested that a bank guaranty of the draft be sent. Ridnour answered the same day that he had taken the matter up with the buyers and they advised that they were instructing their bank to wire the guaranty. Between this date (October 11) and October 15 the car went forward from California, being at Alpine, Texas, October 16. On October 15 the defendants by wire suggested a requirement that the cases of honey must be double-deck, not single-deck cases, and must have glass fronts. Upon arrival of the car at Wichita, the defendants opened it, ascertained that the cases were single-deck cases without glass fronts, and refused acceptance. The car was sent on to Kansas City, where it was sold out in small lots at a loss of $2,910.

There was evidence that at the time in question all California comb honey was being shipped in single-deck cases without glass fronts, while most but not all of Colorado, Utah and Idaho honey was being shipped in double-deck cases. The defendants were familiar with the fact that there were two kinds of cases. In their pleadings and at the trial they claimed that there was an oral agreement with Ridnour on August 31 (when the order was taken) that the cases should be double-deck cases. The plaintiff contended that there was no such agreement.

The contract contained, among others, these stipulations:

"Terms: Net cash, f. o. b. Pacific coast common shipping point; sight draft, with bill of lading attached, payable upon presentation. . . . Notwithstanding shipped or warehoused to seller's order, goods are at risk of buyer from and after delivery to carrier or warehouse, and buyer hereby assumes responsibility as to shortage, loss, delay, or damage in transit upon issuance by carrier of clean bill of lading or by warehouseman of warehouse receipt. . . . Prompt shipment shall be understood to be within ten full business days,

. . . but seller shall not be responsible for failure of transportation companies to furnish transportation facilities;

"Quality: Equal to or better than the average of the grade sold, as established by grading rules of the seller. If sold on sample, to be equal to or better than sample. . . ."

The contract contained no stipulation with reference to double-deck cases. The telegram of October 11, 1920, honey exchange to Ridnour stated:

"Merchants Produce car comb loaded have bank wire First National guaranteeing payment draft upon presentation total twelve thousand eighty-six dollars twenty five cents covering sixteen hundred forty-five cases number ones and fancy, two hundred twenty-three cases number twos; work quick."

The letter of October 11, 1920, from Ridnour to the honey exchange stated:

"We have your wire of to-day and have immediately taken up with the Merchants Prod. Co. and they advise that they are instructing their bank to wire the First National Bank, Los Angeles, to the effect that they will guarantee payment on their draft covering car of comb honey."

Mr. Ridnour testified that "We sent a telegram stating a large car would be satisfactory. Would not have sent it without communicating with defendants." Referring to his letter of October 11, to the effect that he had ascertained from the Merchants Produce Company that they were having their bank wire a guaranty, he stated that he dictated and signed it on the date it bore and that either himself or Mr. Boyan communicated with the defendants and received the information contained therein. In the same connection, the defendants admitted that the matter was brought to their attention.

The jury returned a general verdict for defendants but specifically found that the Ridnour Brokerage Company, on or about October 11, 1920, obtained word from the defendants that they were instructing their bank to wire the Los Angeles bank a guaranty of the draft. There were other special findings in harmony with the general verdict which, for the purpose of this decision, need not be analyzed.

We are of opinion that under all the circumstances, the finding above quoted was controlling. The affirmative action of the defendants was inconsistent with the theory that the contract had been abandoned or rescinded. Their action beyond question showed a waiver of the delay in shipment. It was in effect what Professor Williston calls election to affirm, consisting of continuance to recognize the contract and to accept performance after knowledge of an

excuse for nonperformance. (2 Williston on Contracts, 1327 et seq., §§ 687 and 688.) In the same volume at page 1325, section 686, he discusses the question, what manifestation of election is final, and states the rule, "Any conduct calculated to deceive the other party to his injury in regard to the choice of the party entitled to elect, will also conclude the latter." In Powers v. Scharling, 76 Kan. 855, 92 Pac., 1099, it was said in the opinion:

"Whether the principle is described as equitable estoppel, quasi-estoppel, waiver, ratification, election, or as a requirement of consistency in conduct, is not very important. It is really but an application of the homely proverb that one may not eat his cake and have it too." (p. 859.)

Mills v. City of Osawatomie, 59 Kan. 463, 53 Pac. 470, was a case involving a contract for lighting the streets of Osawatomie for a period of eight years. The city permitted plaintiff partially to rebuild his plant after a fire, before notifying him of forfeiture on account of certain defaults on his part. The city's mere silence was deemed a sufficient election under the circumstances.

Bank v. Commission Co., 113 Kan. 545, 215 Pac. 828, was a case where the owner of cattle when he learned of certain unauthorized sales by his agister, had a right to elect whether to ratify or repudiate the sales. His silence when he had a good opportunity to speak, was an election to ratify. (See, also, Sylvester v. Lynde, 113 Kan. 450, 215 Pac. 305; Morton v. Brinks, 114 Kan. 319, 219 Pac. 527.)

In the instant case, the defendants knew on October 11 of the delay in shipment. They were advised that the honey was just starting forward from California. If it be assumed that they had the right at that time to repudiate the contract, yet, without objection they in effect informed Ridnour that they were going ahead with performance. They did not attempt to impose new conditions until October 15, when the car was almost at Alpine, Tex., and obviously could neither successfully nor practically be recalled.

The judgment is reversed and the cause remanded with instructions to enter judgment for plaintiff for the amount of damages claimed if uncontroverted; if the damages have not been ascertained, to grant a new trial only to ascertain the amount.