No. 33,200

GENERAL REFRIGERATION SALES COMPANY, *Appellee*, v. G. H. ROBERTS, *Appellant*.

(65 P. 2d 269)

Opinion filed March 6, 1937.

*Harry W. Fisher,* of Fort Scott, for the appellant.
*Walter B. Patterson,* of Fort Scott, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This action comes to this court upon the ruling of the district court sustaining the demurrer filed by the plaintiff to the answer and counterclaim filed by the defendant.

Plaintiff in its petition alleged it was the owner of a certain reconditioned 50-gallon Taylor Freezer by virtue of a certain conditional sales contract, a copy of said contract being attached to the petition; that plaintiff had demanded possession which was refused; that plaintiff was entitled to immediate possession of said property, and that defendant was wrongfully detaining same in his possession.

Plaintiff further stated that on September 20, 1934, the defendant executed and delivered to plaintiff his note and conditional sales contract in the sum of $709.70, payable in installments; that certain payments had been made thereon, leaving a balance due thereon of $178.36; that default had been made in certain monthly installments; that such conditional sales contract should be foreclosed; that plaintiff should have judgment for possession of said property, and that on obtaining possession, said property should be sold at private sale, charging the expense to the defendants; that plaintiff should have judgment for costs and further relief.

To plaintiff's petition defendant filed a general denial and counterclaim. For his counterclaim defendant alleged that he was engaged in the restaurant business in Fort Scott and that he was the owner of certain refrigerating equipment called a Lipman Ammonia Refrigerating Machine; that plaintiff handles and sells such equipment, and held itself out to the public as knowing the efficiency of such equipment.

Defendant further alleged:

"That shortly prior to September 20, 1934, an agent of the plaintiff, by the name of H. Strange, came to the place of business of the defendant and wanted to sell to the defendant one reconditioned 50-gallon Taylor freezer and other equipment which would modernize and improve the defendant's refrigerating equipment; that the defendant at that time had installed and on hand the said Lipman refrigerating machine connected with a certain load, which the defendant was then carrying in way of refrigerating units, and also an ice-cream freezer operated by the use of natural ice; that the agent of the plaintiff in order to sell the Taylor freezer, told the defendant that he would figure the capacity of the Lipman machine and inform the defendant whether it would successfully operate the refrigerating units which the defendant was then operating, and in addition thereto the Taylor machine;

"That the said agent examined the machinery, took the dimensions thereof, made computations and after a study of the situation informed the defendant that he had ample capacity in the Lipman machine to carry the load of the refrigerating units then equipped, and also to operate this Taylor freezer which he desired to sell to the defendant; that the defendant is not skilled in the nature, operations and capacities of such machines, but relied wholly

upon the statements and representations of the plaintiff and its agent. In relying upon the representations of the plaintiff and its agent and believing that the machine which they wanted to sell would be operated efficiently by the refrigerating units, which the defendant then was possessed of, the defendant entered into the contract, a copy of which is attached to the plaintiff's petition. Upon the installation of the Taylor machine the defendant disposed of his ice-cream freezing equipment which he then had. . . .

"That contrary to the statements and representations of the plaintiff and its agent, the Lipman refrigerating machine which the defendant had was not of sufficient capacity to carry the additional load of the Taylor freezer. . . .

"That the said refrigerating equipment has failed to efficiently operate the Taylor freezer, and that the Taylor freezer makes such a demand upon the refrigerating unit that it has greatly impaired the efficiency of the defendant's ice box and other refrigerating units; that the plaintiff and its agent well knew, or should have known, that the machine they were selling him could not operate efficiently on the equipment owned by the plaintiff, and that they recklessly, willfully and fraudulently made the representations to the defendant for the purpose of persuading the defendant to enter the contract and purchase the machine.

"That the Taylor freezer was installed in the fall of 1934 in cool weather, and that during the winter months of 1934 and 1935 the faulty operation of the machine was not noticeable, but when warm weather arrived in the spring and summer of 1935 the conditions of which the defendant complains became apparent; that the defendant notified the plaintiff by writing letters, by long-distance telephone calls and by telegrams of the faulty condition which has developed as hereinbefore alleged; that the defendant does not have copies of the letters or telegrams and cannot give the exact dates and times of said notification, nor copies of the same, but alleges that numerous complaints and notifications were made to the plaintiff in the summer of 1935; that whatever writings defendant made to the plaintiff are in the possession of the plaintiff, and that the defendant cannot set up copies of the same. . . .

"That in response to his notification, the plaintiff undertook to make certain repairs and changes in the machinery to make it work efficiently, but that the plaintiff wholly failed to make the machinery function, and left the equipment in the condition as set out in this cross petition. . . .

"That he does not know whether there was some written approval by him of the installation of the machinery at the time it was installed or not, but if there is any such approval it was made by the defendant prior to the time the defects in the operation of the machinery developed. . . .

"That he has never made any claims for damages under contract marked 'exhibit A,' but alleges that his damages accrued to him by reason of the fraud practiced upon him as hereinbefore alleged at the time of the execution of the contract, and at the time of the installation of the machinery. . . .

"That if any receipt or release was procured from him in connection with the said contract, it was procured by the fraud of the plaintiff, and before the defendant had a knowledge of the facts with reference to the fraud that had been practiced upon him."

This was followed by what is stated as "first cause of action," which consisted of four items of alleged damage: first, excessive electric current consumed caused by overloading defendant's equipment, causing damage in the sum of $160.08; second, damage in incorrectly installing thermostat, $54.76; third, damage in sum of $75 due to continuous running of machinery due to overloading; fourth, damage in the sum of $50 for repairs and labor necessary to make the machinery operate.

The second cause of action recited that the failure of the Taylor freezer to efficiently operate caused items of damage including loss of ice-cream mix, $100; loss of meat in icebox, $150; loss of business due to inferior meat, milk and ice cream caused by inadequate refrigeration, $750.

The third cause of action sets out that by reason of the representations of plaintiff defendant disposed of an ice machine for freezing ice cream and defendant would be compelled to install an adequate compressor unit to his damage in the sum of $250.

The total damage alleged as resulting from the fraudulent representations of plaintiff is listed at $1,589.84.

Plaintiff's demurrer was sustained by the district court "for the reason that the answer of the defendant does not state facts sufficient to constitute any defense to the sales contract declared upon by the plaintiff, nor does such answer state facts sufficient to constitute any valid counterclaim against the demand of the plaintiff."

We think the facts alleged in the pleading filed by defendant as above set out constituted a valid counterclaim under our statute, G. S. 1935, 60-710 and 60-711, and under the settled doctrine as frequently announced by this court.

In *Miller v. Thayer*, 96 Kan. 278, 150 Pac. 537, this court held that in an action of replevin to recover a stock of goods under a chattel mortgage the defendant mortgagor might set up as a defense and counterclaim a cause of action which had accrued to him on account of fraud practiced on him by the mortgagee when the goods were purchased. The question was reëxamined and the doctrine reaffirmed in the recent case of *Petersime Incubator Co. v. Ferguson*, 143 Kan. 151, 53 P. 2d 505, and is not subject to further debate in this court.

While we think this case is concluded by the doctrine of *Miller v. Thayer*, supra, counsel for appellee in an exhaustive brief earnestly

press other points. We have examined each point and the authorities cited.

It is urged that there is misjoinder of causes of action in the counterclaim. We do not think the nine separate items set forth in the counterclaim constitute nine separate causes of action, but were merely set up as separate items of damage growing out of the alleged fraud and deceit in the transaction surrounding the sale of the Taylor freezer. In this view there could be no question of misjoinder in the case.

We think the other points pressed arise from an erroneous view as to the nature of the counterclaim. The situation was this: Plaintiff brought an action in replevin to recover specific chattels sold by plaintiff to defendant under a conditional sales contract. A replevin action sounds in tort. The defendant in his counterclaim states a cause of action which he has against the plaintiff for fraud and deceit growing out of the transaction involved in the sale by plaintiff of the property in question. Whether this is permissible under our law depends upon our statute G. S. 1935, 60-711, as construed by this court. The counterclaim is one existing in favor of defendant and against the plaintiff and is clearly one in which a several judgment might be had.

The question then is: Does the cause of action set up in the counterclaim arise out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim? We think it does unless we give a very restricted construction to the word "transaction."

In *DeFord v. Hutchison*, 45 Kan. 318, 25 Pac. 641, a broad construction was given to this word as used in the counterclaim statute and that view has not been restricted by the later cases. (*Hodge v. Bishop*, 96 Kan. 419, 151 Pac. 1105; *Bank v. Elliot*, 97 Kan. 64, 154 Pac. 255; *Masopust v. Hopkins*, 117 Kan. 366, 231 Pac. 843.) We think the counterclaim states a cause of action for fraud and deceit. Whether defendant can prove the various elements of damage which he has alleged must be determined by a trial.

The case must therefore be remanded to the district court with directions to make an order overruling plaintiff's demurrer to defendant's answer and counterclaim. It is so ordered.