No. 44,014

CELESTINE HERL and EDNA HERL, *Appellants,* v. THE STATE BANK OF PARSONS, Parsons, Kansas, a Banking Corporation, *Appellee,* and J. J. FLYNN, JR., and NORTH RIVER INSURANCE Co., a Corporation, *Defendants.*

(403 P. 2d 110)

Opinion filed June 12, 1965.

*Ernest J. Rice,* of Topeka, argued the cause, and *Robert Pennington,* of Chanute, *Harold E. Doherty* and *James E. Benfer,* both of Topeka, were with him on the briefs for the appellants.

*Jack L. Goodrich,* of Parsons, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This was an action to recover damages for the wrongful conversion of personal property. A motion for summary judgment was sustained by the trial court on the pleadings, exhibits and an affidavit filed by the defendant.

The petition commingled three separate causes of action. Damages, both actual and punitive, were requested for (1) conversion of mortgaged property where possession of the property was

obtained by a replevin action and sold at public sale before answer date, (2) conversion of plaintiffs' property sold at the public sale which was not covered by the mortgage and (3) wrongfully preventing plaintiffs from harvesting growing crops.

The first cause presents the chief controversy. We will avoid considerable confusion if we summarily dispose of causes two and three before considering the issues of fact and law raised by the former.

The trial court did not rule separately on the claims but simply sustained the motion for summary judgment addressed to the action as a whole.

It should also be explained at this point that the amended petition which we are considering named an officer of the defendant bank and the bank's surety on the replevin bond as parties defendant. These parties were taken out of the cause by a demurrer. No appeal was taken therefrom and the State Bank of Parsons was left as the only party defendant.

First considering appellants' claim that the appellee wrongfully sold property not covered by the mortgage in question, we find it to be without merit. The appellee did sell three cows, several calves and some miscellaneous dairy equipment at the public sale which were not covered by the mortgage. There is a dispute as to how this property got to the public sale and under whose instructions it was sold. However, it is not disputed that the appellants did attend the sale; they stood by and watched this property sold in the normal course of a public sale without protest, and accepted and cashed the bank's money order for the full amount of the sale price.

We are forced to conclude that the appellants did acquiesce in the sale of such non-mortgaged property and, having accepted the proceeds of the sale with full knowledge of all the facts and circumstances, are bound by the results thereof. (*Hazel v. Lyden,* 51 Kan. 233, 32 Pac. 898. See, also, *Bank v. Commission Co.,* 113 Kan. 545, 215 Pac. 828; *Westhusin v. Landowners Oil Ass'n,* 143 Kan. 404 55 P. 2d. 406; *Pelischek v. Voshell,* 181 Kan. 712, 313 P. 2d 1105.)

Considering appellants' claim as set out in the amended petition to the effect that appellee wrongfully prevented appellants from harvesting certain corn and maize, it appears the alleged claim has been abandoned. The issue is not presented in the statement of

points on which appellants intend to rely, neither is it covered in appellants' brief.

The only questions left for our consideration are the propriety of the sale of the mortgaged property and the propriety of the accounting.

The facts which will determine the validity of the summary judgment must be gleaned from the pleadings, the exhibits and the affidavit submitted in support of the motion for summary judgment.

On the hearing of a motion for summary judgment there should be no attempt to resolve conflicting questions of fact. The party who moves for a summary judgment has the burden of establishing without a doubt that there is no genuine issue of fact (*Warner v. First National Bank of Minneapolis*, 236 F. 2d 853, certiorari denied, 352 U. S. 927, 77 S. Ct. 226, 1 L. Ed. 2d 162). Any doubt as to the existence of such an issue is resolved against the movant (*Zampos v. United States Smelting Refining and Min. Co.*, 206 F. 2d 171). The pleadings are to be liberally construed in favor of the party opposing the motion (*Purity Cheese Co. v. Frank Ryser Co.*, 153 F. 2d 88). He is to be given the benefit of all reasonable inferences to be drawn from the evidentiary matter and all facts asserted by the party opposing the motion and supported by affidavits or other evidentiary material must be taken as true. These and other rules applicable to the consideration of a motion for summary judgment will be found in 3 Barron & Holtzoff, Federal Practice and Procedure, § 1231, *et seq*.

The facts which we must accept as true may be summarized.

On May 5, 1961, plaintiffs mortgaged certain property, consisting of cows and heifers, to the defendant to secure a note in the amount of $4,600 due on January 5, 1962. The mortgage contained the following provision:

". . . if the said mortgagee shall at any time in good faith deem said debt insecure or fear waste of said property, then, and in either such case the mortgagee may take possession of the said property or any part thereof. Upon taking possession of said property, the said mortgagee, or his legal representatives may proceed to sell the same or any part there of at public or private sale, and after satisfying the necessary costs, charges and expenses incurred in connection with such sale, including attorney's fees, the balance of proceeds realized from said sale shall be paid on the debt and interest secured hereby, and thereafter they shall pay over the surplus, if any, to said mortgagor. . . ."

On November 20, 1961, the defendant filed a replevin action alleging itself to be insecure and seeking judgment for possession of the mortgaged property on the strength of its chattel mortgage. A writ of replevin was issued and possession of the mortgaged animals was taken from plaintiffs and given to defendant on the 24th day of November, 1961. The answer date in the replevin action was fixed as December 20, 1961.

The plaintiffs in the action being considered never appeared in the replevin action although they were personally served with summons.

On or about December 16, 1961, at a duly published sale the defendant sold all the mortgaged animals.

Following the sale the bank made an accounting to plaintiffs, the defendants in the replevin action, and delivered to them the bank's money order for $388.33, the amount of the sale price less the balance due on the mortgage and expenses. The accounting was refused and the money order was not cashed.

On December 21, 1961, the bank took a default judgment in the replevin action in which it was awarded possession of the mortgaged property and the replevin bond was released.

Sometime in the fall of 1963, the date not being disclosed by the record, the plaintiffs brought the present action for conversion.

In addition to the facts hereto stated the petition alleged:

"That at the time of the filing of said replevin action, the said note and chattel mortgage were not due and the statement and affidavit of THE STATE BANK OF PARSONS and J. J. FLYNN, JR. to the effect that it deemed itself insecure was untrue and not made in good faith, but made for the purpose of fraudulently appropriating and converting to its own use and to the loss and detriment of plaintiffs, plaintiffs' property, as more specifically alleged hereinafter."

The prayer was for actual damages in the amount of $14,200.00 and punitive damages in the amount of $30,000.00. It will be understood that commingled with the claim for damages for conversion of the mortgaged property was also the claim for conversion of the property that was not mortgaged and also damages for wrongful prevention of harvesting of crops. It cannot be determined just what is claimed as the value of the mortgaged property. However, plaintiffs do not contend that the sale did not produce the full value of the mortgaged chattels.

Although the appellants state several points on which they rely for reversal, they reduce their argument to a simple contention in

their brief: ". . . It is appellants' position that the sale held prior to the answer date by appellee amounted to a conversion of appellants' property covered by the chattel mortgage. . . ."

The appellants have with commendable frankness made a further concession which materially simplifies the issue to be determined. They stated:

"Appellant freely admits that insofar as the replevin action itself is concerned there was subsequent to the premature sale a journal entry filed which decreed that the plaintiff in that case, the State Bank of Parsons, be awarded possession of the mortgaged property which was the subject of the replevin action. Insofar as the possessory aspects of the mortgaged property are concerned, appellant concedes that the replevin action is res judicata. However, it is what transpired before the obtaining of judgment that is the real basis of the case at bar."

A replevin action does determine the right to possession. It will also determine title where the right to possession depends on title. The plaintiff in a replevin action must recover on the strength of his own title or right to possession. (*Rauh v. Dumler*, 170 Kan. 698, 228 P. 2d 694.) In *Johnson v. Beach*, 146 Kan. 781, 73 P. 2d 1040, it is stated:

"At common law (54 C. J. 418) and under our statutes, G. S. 1935, 60-1002 and 61-502, replevin is a possessory action. To maintain replevin under our statutes the plaintiff must show (*a*) that he owns the property, or that he has a special ownership or interest therein; (*b*) that he is entitled to the immediate possession of the property, and (*c*) that the property is wrongfully detained by the defendant. (*Batchelor v. Walburn*, 23 Kan. 733.)" (p. 782.)

We believe the replevin action involved in this case determined more than the bare right to possession. The bank claimed no right in the petition for replevin other than that given by the mortgage. The bank had no right to possession of the property other than for the purpose of selling it and accounting to the mortgagees for the surplus after satisfying the mortgage. Implicit in the judgment giving right to possession under the mortgage was the duty under the mortgage to sell the property.

We are forced to conclude that the judgment in replevin was not only *res judicata* as to the right to possession but was also *res judicata* of the rights and duties of the mortgagee to sell under the terms of the mortgage. Had the court found that the bank was not entitled to possession of the mortgaged property because it did not in good faith deem the debt insecure, the bank would have been guilty of conversion in selling the property and the judgment in replevin would have been *res judicata* of that fact.

There are, however, other matters which are not adjudged in a replevin action as a matter of course. A mortgagee who takes possession of mortgaged property under a replevin action has no greater right to dispose of the property than is granted by the terms of the mortgage. If the mortgagee makes a fraudulent or improvident sale of the property he is liable to the mortgagor for the actual value of the property, even though the sale was conducted in the manner provided in the mortgage. Also, if he claims unnecessary expense or refuses to pay over the balance of the sale price the mortgagor may seek a proper accounting. (*Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130.)

The appellants make no claim that in their petition the sale price was not a fair one. In their petition they allege only that the bank had no right to sell and that it should be held liable for conversion, or in the alternative that they should have an accounting. Since the judgment in the replevin action determined the right of the bank to sell the property as an incident to possession, the only question remaining for determination is a proper accounting. This question could not be reached by a motion for summary judgment as a disputed factual question is presented.

The appellee contends that the appellant could have litigated the question of a proper accounting in the replevin action and therefore it cannot now be raised in a separate action. No doubt the question could have been raised in the replevin action had appellants seen fit to do so. This court has taken a rather liberal approach as to the numerous issues which a defendant may raise in defense to an action in replevin. (*Petersime Incubator Co. v. Ferguson,* 143 Kan. 151, 53 P. 2d 505; *General Refrigeration Sales Co. v. Roberts,* 145 Kan. 333, 65 P. 2d 269; *United States Hoffman Machinery Corp. v. Ebenstein,* 150 Kan. 790, 96 P. 2d 661; *Federal Deposit Ins. Corp. v. Cloonan,* 169 Kan. 735, 222 P. 2d 533.)

There are many claims which a defendant may permissibly raise by way of counter-claim or cross-petition but which are not compulsory. This was particularly true under the old code.

The rule that all matters which could be litigated in an action become *res judicata* does not have as severe an application as appellee would have us make in this case.

Matters which the defendant could have raised by cross-petition but which are not raised by the pleadings or could not have been litigated under the facts constituting the cause of action under the first suit are not *res judicata.* (*Kenoyer v. Board of Barber*

*Examiners*, 176 Kan. 424, 271 P. 2d 267.) Also, in *Green v. Kensinger*, 193 Kan. 33, 392 P. 2d 122, this court held: "A judgment is not conclusive as to matters incidentally brought into a trial and not substantially in issue." (Syl. 5.)

In *Ferguson v. Petersime Incubator Co.*, 146 Kan. 815, 73 P. 2d 1026, we stated:

". . . We may consider what was actually done at the trial of the counterclaim according to the record as pleaded in the case at bar. If we assume that the damages arose from different wrongful acts, and that each constituted a separate cause of action, then in that situation the rule most favorable to appellant is that stated in *Stroup v. Pepper*, 69 Kan. 241, 76 Pac. 825:

" 'The rule that a judgment in bar, or as evidence in estoppel, is binding not only as to every question actually presented and considered and on which the court rested its decision, but also as to every question that might have been presented and decided, does not apply to a different cause of action between the same parties, except as to questions shown to have been actually decided in the former action.' (Syl. ¶ 1.)

"This rule has been followed repeatedly in this state." (P. 820.)

The actual issues in a replevin action are quite limited. In *American State Bank v. Holding*, 189 Kan. 641, 371 P. 2d 167, this court stated at page 644 of the opinion:

". . . In substance, the only issue in a replevin action, such as the instant case, is whether the plaintiff is entitled to the possession of the replevin property at the time of the commencement of the action, and the rights of the parties are determined as of that time. . . ."

We must conclude that the appellants have a right to a full and complete accounting of the disposition of the proceeds from the mortgage foreclosure sale including the propriety of the expenses claimed by appellee.

The judgment is affirmed as to all issues except the right to an accounting; it is reversed insofar as it denies to plaintiffs a full and complete accounting of the proceeds from the foreclosure sale.

APPROVED BY THE COURT.

SCHROEDER, J., dissenting: Upon the facts in this case which the court must consider, the bank, as a wrongdoer, has become involved in litigation and comes out smelling like a rose. New law has been written by the court to favor the wrongdoer.

The trial court in ruling upon the motion for summary judgment found that it should be sustained "on the ground and for the rea-

sons that the issues presented by plaintiff's petition are *res adjudicata*," and thereupon sustained the motion.

By their petition (under what is denominated their first cause of action) the appellants alleged that on May 5, 1961, they mortgaged livestock to the bank to secure a $4,600 note due on January 5, 1962; that on November 20, 1961, the bank filed a replevin action alleging itself to be insecure and seeking possession of the mortgaged property (the bank's affidavit in replevin, set up in its answer, alleged the personal property covered by the mortgage to have an aggregate cash market value of $5,500); that a writ of replevin was issued and possession of the mortgaged livestock was taken from the appellants and given to the bank on November 24, 1961, with the answer date fixed as December 20, 1961; and that on December 16, 1961 (four days before the answer date for appellants), without notice to the appellants, the bank sold the mortgaged livestock plus other property and livestock not covered by the mortgage.

The petition alleged (1) that at the time of the filing of the replevin action by the bank, the foregoing note and chattel mortgage were not due; (2) that the statement of the bank that it deemed itself insecure was untrue *and not made in good faith,* but for the purpose of *fraudulently appropriating and converting* to its own use and to the loss and detriment of the appellants, their property described in the petition; (3) that the appellants advised the bank they would be able to pay the note and mortgage in full before the answer date in the replevin action, and in fact were ready, willing and able to do so prior to the answer date in the replevin action; (4) that without notice to the appellants and before the answer date in the replevin action and before the appellants had an opportunity to make a tender of such payment, the bank sold and wrongfully converted and appropriated to its own use all of the livestock described in the petition, including livestock which was not covered by the chattel mortgage; and (5) that the bank did not account to the appellants for the proceeds.

It *is to* be noted both the law and the provisions of the chattel mortgage require that if the bank deems the debt insecure, it must be in *good faith.*

The appellants alleged (under what is denominated a second cause of action) among other things, that the actions of the bank were done maliciously (setting forth in detail the facts upon which such charge was made).

The foregoing enumerated points were placed in issue by the bank's answer.

The only significant admission made by the appellants for purposes of this appeal is that judgment was rendered by default in the replevin action against them on the 21st day of December, 1961, five days after the cattle were sold, and that the appellants did not appeal from such judgment.

It is the position of the bank that the appellants could have raised all of the issues set forth in the instant action by their answer in the replevin action, and that by virtue of the judgment which became final in the replevin action the issues are now *res judicata* and the appellants are thereby estopped.

The court throughout the opinion recites facts by which it considers the appellants bound upon the mere assertion that the appellants "make no claim" or "do not contend." The assumption of these facts in the negative by virtue of a *void* in the record on such point is wholly unwarranted. While the court properly sets forth some of the rules applicable where a motion for *summary judgment* is sought, it fails to apply them in arriving at its decision.

For example, viewing the record as it appeared to the trial court, Syllabus ¶ 1 and the corresponding portion of the opinion find no support in the record. Such statement is found only in the bank's brief. In the appellants' reply it is specifically admitted that Celestine Herl was present at the sale, but the record is silent as to whether or not he protested that his property was being sold at the public sale. The appellants denied that the livestock was sold at the instance and request of the appellants at the public sale, and denied that an accounting was rendered to them for the proceeds. They further denied that the bank's money order "in the amount of $1,077.50 was issued to plaintiff Celestine Herl, which he accepted and cashed," a copy of which was attached to the answer of the bank.

Proof of these facts of necessity must await the trial where the evidence is presented and admitted or rejected under established rules.

The appellants in their brief for the first time admit receiving $1,077.50, the proceeds of the nonmortgaged property sold at the public sale. But, in my opinion, this admission of fact was not before the trial court, and the record on a motion for summary judgment must be viewed as it stood before the trial court.

In view of what the court has done, it is advisable to consider

other rules which apply when a motion for summary judgment is sought.

A summary judgment is proper only where no disputed question of fact is determinative of duty or right and a formal trial would add nothing to the case. But the remedy is drastic and allows no room for speculation as to the factual background nor the dispositive legal ruling. (*Atkinson v. Jory*, 292 F. 2d 169 [10th Cir. 1961].) Where there is a genuine issue of material fact raised by the pleadings, and where an affidavit is filed by the movant seeking a summary judgment, *the failure of the adversary to file counter affidavits to affidavits for summary judgment is not controlling, since a summary judgment proceeding is not a trial by affidavits.* (*United States v. Kansas Gas and Electric Company*, 287 F. 2d 601 [10th Cir. 1961].) Where a plaintiff states a cause of action which entitles him to a trial by jury, he is entitled to have his case tried in that way and cannot be compelled to submit his evidence in the form of affidavits in response to a motion for summary judgment and have the issues determined by such motion. (*United States v. Broderick*, 59 F. Supp. 189 [D. C. D. Kan. 1945]; and see, 3 Barron and Holtzoff, Federal Practice and Procedure, § 1232.2, p. 111, and § 1234, p. 137.)

Indicative of the bank's erroneous conception of a summary judgment is the following counter statement of points set forth in its brief:

"2. The trial Court having heard the evidence and rendered judgment in the case of State Bank of Parsons v. Herl, Case No. 8959, was *correct in its finding* that there was no fraud on the part of defendant in securing said judgment.

"3. The Court, based on the pleadings and conduct of plaintiffs at the sale, *correctly found* that there had been no conversion of the mortgaged property nor of the separately owned property of plaintiffs.

"4. The Court *correctly found* that plaintiffs had been given an accounting of the sale proceeds covering both the mortgaged and non-mortgaged property, and by its judgment approved said accounting. (Record Exhibit C) attached to defendant's answer." (Emphasis added.)

As to the mortgaged property the case thus boils down to one proposition—whether the issues framed by the pleadings have become *res judicata* by reason of the "judgment" in the replevin action, where the bank in such replevin action sold the property covered by the chattel mortgage prior to the answer day of the appellants in the replevin action.

On the facts here presented this proposition is one of first impression in Kansas and should not be considered lightly.

The court in its opinion has completely ignored the replevin statute. G. S. 1949, 60-1003 reads:

"The order [to deliver the property to the plaintiff] shall not be issued by the clerk until there has been executed and filed in his office, by one or more sufficient sureties of the plaintiff, to be approved by the clerk, an undertaking in not less than double the value of the property as stated in the affidavit, to the effect that *the plaintiff shall duly prosecute the action,* and pay all costs and damages which may be awarded against him, *and if the property be delivered to him, that he will return the same to the defendant if a return thereof be adjudged.*" (Emphasis added.)

Similar language is found in K. S. A. 60-1005 (*b*).

Under the foregoing statute the plaintiff in a replevin action acquires possession of the property by virtue of the bond wherein the plaintiff assures the court in writing that he will duly prosecute the action, and if the property be delivered to him that he will return same to the defendant if a return thereof be adjudged.

In violation of the bond posted pursuant to these statutory provisions the bank in the instant case sold the property immediately upon procuring possession, prior to the answer day set for the defendants in the replevin action. Can it be said that the bank, after having invoked the process of the court to obtain possession of property, over which the court asserted its jurisdiction, is permitted, after acquiring possession, to turn its back upon the court and assert what it claims to be a right under a chattel mortgage to sell the property? I think not. In my opinion the appellants at this point had the right to elect whether to proceed in the replevin action, or to treat the action of the bank as a conversion and sue in an independent action for such conversion. To hold otherwise would permit a chattel mortgagee to use the court as an instrument of fraud. It would legalize wrongdoing on the part of the bank which claimed a valid chattel mortgage, without requiring it to follow through in the replevin action to the final adjudication of its right to possession. Once the bank has abandoned the replevin action, as it did in the instant case, its hands are no longer clean. Certainly the defendants under these circumstances in the replevin action should have the same right to abandon further proceedings in the replevin action.

On this point the court ignores precedent and fails to follow its own admonition when it says: "The rule that all matters which could be litigated in an action become *res judicata* does not have as severe an application as appellee would have us make in this case." (p. 40.)

Undoubtedly the purported accounting set forth by the bank in its answer was too much for the court to countenance. In the accounting the bank claimed a credit of $1,756.63 for taking care of the livestock (21 cows and 15 heifers) for a period of twenty-two days. (This represents one-third of their value.) Among the items for which it claimed credit was $110 for the premium on the replevin bond, and $75 for "supervision of cattle" over and above labor of $575.

At the turn of the century in *Johnson v. Boehme,* 66 Kan. 72, 71 Pac. 243, a plaintiff wrongfully procured possession of some livestock in a replevin action from a bailee. The bailee recovered his costs but took no judgment for the return of his cattle, or the value thereof. The bailor, who supplied counsel for the bailee in the replevin action, sued the sheriff for the value of the cattle in an independent action. In the opinion the court said:

". . . Must a party defendant in a replevin action, where the taking is adjudged unlawful, procure judgment to be entered in the alternative in his behalf as provided in this section, or in default thereof be forever remediless? In other words, is this matter *res judicata,* upon the theory that what might have been determined, but was not, must be held to have been waived or determined against the defendant?

"It will be noted that the language of the statute is permissive only. Judgment *may* be had. We think this leaves the matter entirely optional with the defendant as to whether he will take this additional order and judgment or leave it to the result of some subsequent action. The right to have value fixed was not given to the failing, but to the prevailing, party, and was in his interest. He may be prepared to go into this question in the replevin action, or he may not. *He has had his property wrongfully taken from him. It scarcely lies in the mouth of a wrong-doer, when sued in a subsequent action, to say that the plaintiff did not take all of the relief to which he was entitled in the former case.*" (p. 74.) (Emphasis added.)

And so in the instant case, where the pleadings of the appellants and the issues framed thereon establish the bank as a wrongdoer, upon the record as it must be viewed on a motion for summary judgment, it scarcely lies in the mouth of the wrongdoer, when sued in an action, as this, subsequent to the replevin action, to say the appellants did not litigate all of the issues which they could have litigated in the replevin action.

For an action where a conversion was recognized as growing out of a replevin action see, *Watkins v. Layton,* 182 Kan. 702, 324 P. 2d 130.

The Supreme Court of Oklahoma, on a replevin statute similar to ours, held that an automobile sold by a finance company during

the pendency of a replevin action in which it procured possession, where no redelivery bond was given, was *in custodia legis*, and, when the finance company sold it prior to the determination of the action, it was guilty of a conversion and liable in damages to the owner. (*Radcliff Finance Company v. McComas*, 283 P. 2d 836 [Okla. 1955]; and see, *P. & E. Finance Co. v. Wooden et al.*, 205 Okla. 78, 235 P. 2d 691.)

A situation analogous to that in the instant case was before the Oklahoma Supreme Court in *Scott v. Standridge*, 117 Okla. 111, 245 Pac. 591. There the plaintiff had a chattel mortgage on certain property of the defendant and instituted a replevin action for its possession. The property was seized under a writ of replevin and sold by the plaintiff prior to the final judgment in the replevin action. Judgment was finally taken in the replevin action adjudging plaintiff entitled to possession of the property, and thereafter the plaintiff credited the sum received on the note of the defendant, after deducting expenses and costs, and brought a separate action for the balance of the note. In this separate action the defendant pleaded a conversion of the property by the plaintiff and the wrongful sale thereof, and alleged the true value of the property to be different from that claimed by the plaintiff and sought to have the same credited on the note.

On the trial of this issue, the court instructed the jury that the only issue for it to determine was the reasonable value involved at the time of the sale of the property by the plaintiff. The court further instructed the jury that it should find the reasonable value of the property and offset the same against the sum admitted to be due the plaintiff under the promissory note. The jury returned a verdict in the case for the plaintiff but in an amount far less than that claimed. The only proposition urged by the plaintiff on appeal was that, having given a bond in the replevin action and the property having been turned over to the plaintiff by the sheriff, there was no requirement to wait for the determination of the replevin action before proceeding to advertise and sell the property. In the opinion the court said:

"The only question involved in the case is whether or not the property held under a replevin bond is in the custody of the law. If the defendant had consented to the delivery to the plaintiff of the property in question upon his demand therefor, plaintiff's theory would be applicable, but when the defendant refused to deliver the property to the plaintiff, his refusal was tantamount to an assertion of his right to retain the possession of the property until the question of the right of possession was determined in

the action. The replevin bond given by plaintiff required him to keep the property safely until judgment was rendered in the replevin action." (p. 112.)

It should be noted the defendant there did not raise the issue of conversion in the replevin action which he might have done, but raised it in a separate action when the plaintiff sued him for the balance due on the note.

It is respectfully submitted the reasoning in the Oklahoma decisions is sound, and such law should be adopted as the law applicable to the instant case.

The court places emphasis on a "concession" made by the appellants in their brief which it contends materially simplifies the issue to be determined. The "concession" is: "Insofar as the possessory aspects of the mortgaged property are concerned, appellant concedes that the replevin action is res judicata."

This is not an admission of fact by which a party is bound. It is, if anything, an admission of law. But a court is not bound by an admission of law made by one party in his brief any more than it is bound by an instruction given by the trial court to a jury, where such instruction is clearly erroneous. (See, *State v. Gee*, 194 Kan. 443, 399 P. 2d 880.)

The trial court did not have this "concession" before it to decide the case. It appeared in this case for the first time in the brief of the appellants.

Normally, when an opinion recites that a given proposition of law is conceded by a party to the litigataion, it implies the court's approval of the legal proposition or rule. Otherwise, courts would be powerless, at the hands of the litigants in court, to control the growth and development of the law by which our society is governed. Courts must have power to direct the course and development of the law in its many aspects. This has been recognized in various decisions.

In *Boettger v. Two Rivers*, 147 Wis. 60, 144 N. W. 1097, the court said:

"It is in substance stated in the opinion of the court that counsel for the city conceded in a brief filed that if the assessment was not properly made under sec. 925-248 a legal assessment could not be made, and it may well be that by reason of such concession the matter of reassessment did not receive as careful consideration as it would otherwise have had. After the court announced its decision the defendant moved for an order directing a reassessment, which motion was denied. If the case made was a proper one in which to order a reassessment, the statute requiring such an order to be made is mandatory, and we do not think the appellant should be concluded by the position taken in its brief before the circuit court." (pp. 66, 67.)

The Supreme Court of Illinois in *The People v. P., Ft. W. & C. Ry. Co.,* 244 Ill. 166, 91 N. E. 48, said:

". . . The admission was one of law and not of fact. It was not made to deceive, and did not deceive or prejudice, plaintiffs in error. They were not induced by it to do or omit to do anything they would have done or omitted had the admission not been made. The admission had no influence upon the decision of the chancellor, for, notwithstanding the admission, the finding was for the defendant and the bill was dismissed. Parties cannot, by their admissions of law arising out of an undisputed state of facts, bind the court to adopt their view. . . ." (p. 171.)

The Supreme Judicial Court of Massachusetts in *Wasserman v. Tonelli,* 343 Mass. 253, 178 N. E. 2d 477, said admissions of law in the course of trial do not bind the party making them (citing many cases).

The Supreme Court of Michigan in *Rice v. Ruddiman,* 10 Mich. 125, said:

". . . And though it was admitted by both parties that, 'for the purposes of the trial, Lake Muskegon should be considered an arm or estuary of Lake Michigan, and part and parcel thereof, and not as a widening or continuation of Muskegon River,' I am inclined to consider this rather as the admission of a conclusion of law from the facts, than as a mere admission of fact. Whether this lake is to be considered a part of Lake Michigan, or as a widening of the Muskegon River, so far as it might be material, would be a question of law to be decided upon the facts of the case, and no admission of the parties could bind the Court as to the law. . . ." (pp. 137, 138.)

It appears to me the court has erroneously considered itself bound by a proposition of law (quoted in Syllabus ¶ 3) which it termed a "concession" by the appellants, and permitted it to simplify the issue to be determined without actually deciding this point in the case. In other words, instead of simplifying the issue to be determined, it has confused the actual decision of the court. How much of the decision is attributable to the admission of law by which the court has considered itself bound? Would the decision be otherwise in the absence of such "concession?"

As to the livestock covered by the chattel mortgage, the decision herein is very important in that it charts a new course of law, both as to the merits of the factual situation presented, and as to procedural aspects concerning a motion for summary judgment, authorized since January 1, 1964, under our new code of civil procedure. The court's decision as to both points should be crystal clear for the benefit of both the Bench and the Bar.

As to the property sold by the bank at public sale, which was not covered by the mortgage, the appellants devote one small paragraph in their brief. This may be attributable to the poverty of the appellants, considering the entire argument in their brief which consists of five and one-fourth pages. A brief of this nature is inadequate to determine the momentous questions presented, and independent research has been necessary.

In view of the law applicable to ruling upon a motion for summary judgment, it seems quite robust on the record presented to cut the appellants off on this count.

For the reasons stated, it is respectfully submitted the motion for summary judgment should have been overruled by the trial court and its judgment should be reversed.