**UNITED STATES ex rel. RYAN et al. v. BRODERICK et al.**

**Civil Action No. 4806.**

District Court, D. Kansas, First Division.

Jan. 13, 1945.

Marion D. Waltner and Clarence C. Chilcott, both of Kansas City, Mo., A. J. Herrod, of Kansas City, Kan., Payne Ratner, of Wichita, Kan., and C. W. Prince and Guy W. Runnion, both of Kansas City, Mo., for plaintiff.

W. F. Lilleston, of Wichita, Kan., N. E. Snyder, of Kansas City, Kan., Anthony F. Zarlengo, of Denver, Colo., Howard T. Fleeson, of Wichita, Kan., and Louis R. Gates, of Kansas City, Kan., for defendants.

HUXMAN, Circuit Judge.

All of the defendants in the above entitled action have filed motions, together with supporting affidavits, for summary judgment. The matter was set down for hearing on the 27th day of November, 1944, and plaintiff was notified of such hearing. No counter affidavits were filed by plaintiff and no appearance was made by him at the time of the hearing, either in person or by attorney. The matter was fully presented to the Court by the defendants, through their attorneys, and ar-

guments were made and briefs were filed in support of their contentions. Plaintiff was notified of the request of the defendants to file briefs and given an opportunity to file further briefs in opposition to the motions for summary judgment, but no briefs have been filed.

The entire matter has been given full consideration by the Court. The question is not free from doubt, and, in the view of the Court, the case is a borderline case as to whether the motions for summary judgment should be sustained.

■■■ The nature and scope of a motion for summary judgment is not clearly defined or delineated with any degree of exactness. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, broadens considerably the old procedure for judgment on the pleadings. Numerous cases have considered and discussed Rule 56. No attempt is made here to quote exhaustively · from the various decisions, and only such decisions will be referred to as in the view of the Court will clearly present the question we have before us here. In American Ins. Co. v. Gentile Bros. Co., 5 Cir., 109 F.2d 732, 735, the court said:

"Rule 56, 28 U.S.C.A. following section 723c, clearly provides that a summary judgment should only be awarded when the pleadings, depositions, admissions, and affidavits, if any, disclose that except as to the amount of damages there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. *Under this rule a summary judgment should only be given when it is quite clear what the truth is.*"

In Cohen v. Eleven West 42nd Street, Inc., 2 Cir. 115 F.2d 531, 532, the court said:

"A motion for summary judgment is not a trial; on the contrary · it assumes that scrutiny of the facts will disclose that the 'issues presented by the pleadings' need not be tried because they are so patently insubstantial as not to be genuine issues at all."

In Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 472, the court said:

"But the history of the development of this procedure shows that it is intended to permit 'a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that

there are no genuine issues of fact to be tried.' "

In Board of Public Instruction for County of Hernando, State of Florida, v. Meredith, 5 Cir., 119 F.2d 712, 713, the court said:

"The intent and purpose of Rule 56 is to promote the prompt disposal of actions in the interest of justice where there is no genuine issue as to any material facts."

In my view, these pronouncements establish the principles which must guide us in determining the sufficiency of these motions. It is quite clear that a motion for summary judgment cannot be made a substitute for a trial either before the court or a jury, and a plaintiff who states a cause of action which entitles him to a trial by jury is entitled to have his case tried in that way, and cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for summary judgment and have the issues determined thereby. A motion for summary judgment can be effective only when the motion, together with the supporting affidavits, clearly establish that there can be no real issue of fact notwithstanding the allegations of the petition which upon their face state a cause of action. It is in the light of these principles that I consider the problems presented by these motions.

■■■ Numerous affidavits have been filed by all the defendants in support of their motions for summary judgment. Some of these affidavits are by the defendants themselves, in which they deny any fraud on their part or intent to defraud or that they entered into a conspiracy. These affidavits are given no consideration by the Court because I do not believe that an affidavit by a defendant in which he merely denies an allegation which makes him liable if true can support the motion for summary judgment, or that it can be said that from such a denial it clearly appears that no controversy is presented notwithstanding the allegations of the complaint. In reaching my conclusions in this matter, I consider only supporting affidavits which set out matters of record which challenge the attention of the Court, especially in view of the fact that no effort is made to controvert them, explain them, or destroy their effect. I am further of the opinion that in considering the question whether the petition states facts from which it can be said that a real controversy

exists we must consider the entire setting of this case.

From the records in the case the following appears:

The informer, William V. Ryan, was an employee who worked on the job. He filed his original complaint March 25, 1943. This complaint was wholly insufficient. Various motions were lodged against it by the defendants and were sustained by the Court, and plaintiff was required to prepare a bill of particulars. Judge Richard J. Hopkins, who heard the original motion, in the memorandum opinion set out with particularity the respects in which he thought the petition was insufficient and what plaintiff was required to present. Plaintiff sought to comply with the order of the court, and on June 23, 1943, filed a bill of particulars. Motions were promptly lodged by the defendants to the sufficiency of this bill of particulars, and, after consideration, the trial court again concluded that plaintiff had wholly failed to comply with the order of the Court, with the exception of two items, to-wit, the Chester Ellis item set out in Count 15—1, and an item relating to the alleged waste of lumber, set out in Count 15—2. In passing upon the renewed motions of the defendants to strike, the court again gave plaintiff additional time in which to comply with the orders of the Court in respect to furnishing the bill of particulars. On July 16, 1943, plaintiff filed a pleading denominated Amended and Supplemental Bill of Particulars. Motions were again filed by the defendants to dismiss and to strike. The motions to dismiss for failing to state a conspiracy were again overruled. The motions to make more definite and certain were sustained in many respects and overruled in others. Plaintiffs were required to file a new pleading which would incorporate the required amendments, and it was ordered that such pleading become the only pleading upon which this case would be tried. Plaintiff filed an amended complaint. The motions of the defendants to dismiss and strike were renewed, and were heard by this Court on the 11th day of March, 1944. The motions to dismiss were sustained as to all of the counts except Counts 15—1, 15—2, 15—5, 15—31, 15—34, 15—35, 15—40, 15—51 and 15—52, and were sustained in some particulars as to some of these counts. These are the only counts that remain in the action. Thereafter defendants filed these motions for summary judgment supported by numerous affidavits.

Count 15—1 alleges fraud in the matter of the employment of one Chester A. Ellis. In substance it is alleged that he was employed by the defendants; that after his services were discontinued and while he was no longer rendering any service, the defendants, acting in concert, caused to be made a series of false, fraudulent and fictitious claims in conformity with the successive pay-days based upon the false pretense that he was still employed; that these were presented to the United States Government and were approved and paid; that none of the proceeds of the false and fictitious checks were received by Ellis.

It is significant to note that the count does not specifically charge that the defendants or any of them received the proceeds of these alleged false and spurious checks. In support of the motion for summary judgment, defendants filed the affidavit of E. F. Thomas, which alleges that he was the paymaster for the defendants Lozier, Inc., Broderick & Gordon. He attaches photostatic copies of 11 pay checks which were issued to Chester A. Ellis. The affidavit states that of his own knowledge they were the only 11 checks ever issued to Chester A. Ellis and that the defendants never requested or received further reimbursement for any other amount in connection with the employment of Chester A. Ellis. The charge in Count 15—1 is a fantastic one. It is couched in very general language. It is my view that in the light of this affidavit, with the photostatic copies of the eleven checks attached, and the positive allegations made by the paymaster, there can be no reasonable issue which would establish a cause of action on Count 15—1, notwithstanding the allegations of the complaint.

Count 15—2 in substance alleges that many thousand dollars worth of lumber which had been paid for by the government was ordered destroyed by the defendants in a fire-pit and thereafter replaced by other lumber, subsequently purchased by the defendants to serve the same purpose; that by virtue of this course the government had been defrauded of vast sums. I have grave doubts whether this count states a cause of action under any circumstances. It does not allege that the defendants profited by this in any way. Mere waste and extravagance would not

tend to support the conspiracy to defraud the government. The motions to dismiss Counts 15—1 and 15—2 were overruled by me originally because their sufficiency had been sustained by Judge Hopkins, and I felt myself bound by that decision. The matter, however, is now before me upon the question of a summary judgment, and it is my view that I may review the language of the count, as well as the supporting affidavits in favor of summary judgment. The defendants filed the affidavit of L. W. Hicks, who in substance states that he worked as Assistant Superintendent in the Job Hauling Department for Lozier, Inc., Broderick & Gordon, and that he had charge of and personally supervised the salvaging of lumber and the burning of waste and scrap lumber, and that the only lumber of any value that was burned was due to accident or mistake and not according to any directions from any of the defendants; that he sought at all times to save all the lumber possible. The affidavit of Albert Batchelor, Labor Foreman and General Labor Foreman, working directly under Hicks, is also filed. He states that he was in charge of the men in the fire-pit and the salvage yard. He adopts as his own statement that of Hicks, and states that in many instances truck drivers carrying usable lumber were diverted from the fire-pit to the salvage yard. The affidavit of Harold F. Gregg states that under his direct supervision nearly 3,000,000 board feet of lumber were salvaged to be re-used. In light of the very vague and general allegations of Count 15—2, and the failure to specifically state that the defendants received the benefit of this alleged fraudulent destruction of lumber, it is my view that the affidavits are sufficient to warrant summary judgment of Count 15—2.

Count 15—5 alleges in substance that the defendants and each of them, conspiring together, defrauded the government by purchasing thousands of doors at a full list price of $10.50 each, when with ordinary trade discounts available to individual purchasers the net price then prevailing was $4.97, and that they thereby defrauded the government of thousands of dollars.

Defendants have filed the affidavit of Leonard J. Carlon, successor to E. S. Stone, as chief purchasing agent. The affidavit has attached to it photostatic copies showing that 3,924 ordinary wood doors of various sizes were purchased at an average price of $3.79, plus, each; that only 212 of the 3,924 doors were priced higher than $5, and that all other doors purchased were of different types having special features. The affidavit specifically states that the orders attached to the affidavit were the only orders by defendants for such doors. The affidavit of A. A. Galligher, Chief Auditor of Lozier, Inc., Broderick & Gordon, states that he knows the contents of Carlon's affidavit and that he caused payment to be made for such orders and for no other orders for ordinary wood doors, and for only such orders were the defendants reimbursed. In the absence of anything to the contrary, it appears to me that the only conclusion can be that Count 15—5 presents no real issue, notwithstanding the allegations.

Count 15—31 in substance alleges that the sub-contractors U. S. Transit Mix Corporation, W. S. Lozier, Inc., and Broderick & Gordon falsely certified to the United States and submitted bills regarding false certifications whereby $2,444.29 was received by them from the United States for calcium chloride to be included in certain mixtures of concrete; that the certifications represented 488,857 lbs. of said mixture, whereas in truth and in fact only 300,000 lbs. had been received, and only 239,500 lbs. had actually been incorporated into the concrete, and that by virtue thereof the government was defrauded of $1,246.79. In opposition to these allegations the defendants have filed the affidavit of A. A. Galligher, Chief Auditor, with attached photostatic copies showing that the partial payment for work up to February 15, 1943, on estimate No. 14, was for placing 488,857 lbs. of admixture in concrete, payment and approval being in regular form; that between March 13 and 17, 1943, affiant received partial payment estimate No. 15 covering work from the beginning to February 28, 1943, which showed the placing of admixture in concrete totaling 239,500 lbs. He states that the amount of $1,246.79 which had been overcharged because of the mistake was subtracted from the next partial payment check made to the sub-contractor and Lozier, Inc., Broderick & Gordon were reimbursed by the United States for the same amount paid the sub-contractor in partial payment No. 15, which amount had borne the subtraction correcting the error. The affidavit of R. E. Skinner, assistant engineer, states that he was in charge of computations of work

performed by subcontractors, and that a recheck of the partial payments resulted in finding the error as to the number of pounds of calcium chloride used, and the mistake was corrected.

Count 15—34 in substance alleges that the defendants, for the purpose of defrauding the government, dissipated seven days of ten hours each, two of them being over-time days, for 23 steamfitters in labor at buildings numbered 7—56—1, 2, 3, 4; that the only pretext of accomplishing any labor was the installation of one piece of pipe fourteen feet long, and that the government was damaged in the sum of $2,690 thereby. In the first place, the count fails to allege specifically that the defendants profited or received this amount. If they did not profit, it is difficult to see how or why they would wilfully dissipate this time. In support of motion for summary judgment on this count, the defendants filed the affidavit of Carlos R. Egan, who alleges that there are, and were, no such numbered buildings as are set out in the count, but that there were buildings numbered T—56—1, etc. The affidavit specifically alleges that during the time set out in this count, there were no plumbers or steamfitters employed at such places by Lozier, Inc., Broderick & Gordon. The affidavit of J. W. Robinson, Chief Auditor of subcontractor Wm. E. Joslin, states that only 96 hours of labor at the buildings T—56—1, etc., were turned in by the steamfitters and plumbers and their foremen during the entire last week of December, 1942, for which they were paid $178,29, ·and for which amount and no more Joslin was reimbursed. Affidavits by the superintendent of plumbers and the general foreman of steamfitters in the employ of Wm. E. Joslin state that on their daily rounds of inspection during the times alleged they saw no loafing or wasting of time. In the absence of anything to controvert these specific and positive allegations of the men who were in charge of this work and who are not defendants themselves, it is my conclusion that the affidavits are sufficient to sustain a motion for summary judgment.

Count 15—35 makes in substance the same charges that Count 34 does, and what has been said regarding Count 15—34 applies with equal force here.

Count 15—40 in substance alleges that the defendants certified that 125,238 cubic yards of concrete and grout had been mixed with heated water, for which they received $25,047.60, representing 20 cents per cubic yard. The substance of the charge in this count is that there was useless heating of this mix in that the temperature did not require it. The affidavit of Andrew R. Milnar, general superintendent of construction, stated that from November 1, 1942, to March 26, 1943, concrete was mixed with heated water. He states that such action was justified in view of the danger of extreme temperatures and need for speed in construction work; that any other method would have been impractical, and that failure to deliver concrete at specified temperatures would have been negligence. He states further that no orders were given to permit any act resulting in unlawful and unjust payments to subcontractors. The affidavit of J. C. Schmidt, civil engineer, states that he prepared the specifications for concrete work. He sets forth the facts of the specifications which in substance state that concrete shall not be placed when temperatures are below 35 degrees F., nor when the concrete is likely to be subjected to freezing temperatures before final set has occurred, unless specifically authorized by the contracting officer in writing, and when so authorized precautionary measures must be taken. He states that the procedure used in heating this mix was justified and that the failure to heat concrete during the winter months would have been negligent. It is of course obvious that the temperature varies, that it is not only uneconomical but dangerous to discontinue the heating of a mixture such as this merely because the temperature does not require it, when the temperature is subject to sudden, variable changes. It is my view that in light of these affidavits and the general nature of charges made in Count 15—40, it presents no justiciable controversy in fact, and the motions for summary judgment as to this count should be sustained.

Count 15—51 in substance charges fraud in overstating the number of yards of dirt·that had been hauled and moved. It alleges that the defendants did not move or haul the yardage certified to the government, and that in determining the number of yards they counted the scoops of dirt excavated, assigning to each scoop a capacity of 20 yards. The affidavit of James L. Dickson, civil engineer, who was in charge of aiding and assisting in de-

termining quantities for partial and final payment for excavation describes the method of determining quantities excavated and states that the quantities for final payment were determined entirely upon computations made by him or caused to be made by him and that they were true and correct to his knowledge. He specifically denies that such amounts were determined by a scoop count method. He denies that plaintiff's figures as to prices for excavation are correct, and sets forth the figure of 45 cents per cubic yard for common excavation as the correct price. The affidavit of A. A. Galligher gives a detailed statement, supported by photostatic copies of estimate sheets and checks on all estimates and final payments to Jones Company. From the copies it appears that there were 1,222,900 cubic yards of common excavation, for which Jones was paid 45 cents per yard. Affiant states that there were other types of excavation, hauling, overhauling, and installation work, done by Jones Company; that his total payment from Lozier, Inc., Broderick & Gordon amounted to $676,289.57.

Count 15—52 alleges over-charges made in hauling of dirt by O'Dell and Riney Construction Company, and sets out substantially the same charges as are contained in Count 51. The affidavit of James L. Dickson is much like the affidavit filed in connection with the Jones Company transaction in Count 15—51, except as it pertains to names and figures. The affidavit of C. Howard Murphy, manager of the subcontract department of Lozier, Inc., Broderick & Gordon, states that he prepared or caused to be prepared the estimates and final estimates for payment to O'Dell and Riney for their work. He states the final sum of $872,948.42 was paid for all types of excavation, hauling and other work. The affidavit of A. A. Galligher shows by attached photostatic copies the amounts of different types of work done by O'Dell and Riney Construction Company, and the amount paid for each particular part of the work. All of these affidavits state that they did not in any way participate in any fraudulent transaction. There are numerous other affidavits filed of like nature or tenor, which in the interest of brevity will not be set out here in detail.

It is also of some significance that after the passage of the new informer statute, which required such actions to be prose-cuted in the name of the government, the government made application for permission to intervene and be substituted as a party plaintiff. Permission was granted, and it was made a party plaintiff. The present plaintiff, William V. Ryan, filed a motion to dismiss as to the government and that its appearance and entry be stricken. This motion was overruled. After thorough investigation by the government, it made application to be permitted to withdraw from the case, and such application was granted.

■■■■■ There is one other matter which in my view is entitled to weight and consideration in determining whether these general allegations present a real controversy upon which these defendants should be compelled to go to trial. A conspiracy is an unlawful, concerted agreement of action by a number of persons for the purpose of effectuating a fraud. While it is not essential to such a conspiracy that each conspirator have a common interest in the scheme, it is obvious that men do not conspire to commit a fraud unless they have a personal interest. The general allegations of the complaint are that these various contractors conspired together to defraud the government in enhancing and increasing the cost, rendering false and spurious charges. It must be borne in mind that there were separate and distinct contracts. If a contractor who had the contract for the plumbing wanted to defraud the government, it was not necessary for him to conspire with the contractor who had the contract for the construction of buildings, because each contract was separate and distinct. There is no charge or allegation in the complaint that the conspiracy contemplated that they would pool the unlawful gains and apportion them among the various contractors and sub-contractors who were charged with conspiracy. I realize that this is not determinative of either the sufficiency of the petition to state a conspiracy or of the sufficiency of the motions for summary judgment, but it is an element to be taken into account.

There is yet another matter which weighs quite heavily with the court in the conclusion which it has reached. This was not a cost-plus contract, so that the compensation of the contractors depended upon the cost of the project. If it were such a contract, it would be much easier to see why men would seek to increase

the cost, because as the cost went up, so would their compensation. This was a cost-plus-fixed-fee contract, in which the government paid to the defendants a specified, stipulated and agreed amount as compensation for the construction of this plant, and the government itself paid the costs. This fee was fixed and if the alleged fraudulent manipulations, waste and extravagance of defendants increased the cost to the government by fifty per cent, their compensation still remained the same. Again, it does not follow that because such is the fact, men may not conspire to do an unlawful thing, but such a situation does challenge one's attention, especially when the allegations of the complaint, after three or four attempts to state them specifically, still to a large extent deal in generalities.

After a consideration of the entire matter in light of all these circumstances, I have come to the conclusion that the motions for summary judgment are good and should be sustained. The defendants will prepare and submit for approval and signature a journal entry of judgment in conformity with the views expressed herein.