No. 44,426

Lester Secrist and Neva Secrist, *Appellants*, v. George W. Turley and Joe Lee, *Appellees.*

(412 P. 2d 976)

Opinion filed April 9, 1966.

*A. L. Shortridge,* of Joplin, Missouri, argued the cause, and *Paul Armstrong,* of Columbus, was with him on the briefs for the appellants.

*John B. Towner,* of Pittsburg, argued the cause, and *H. Gordon Angwin,* of Pittsburg, was with him on the briefs for the appellees.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a summary judgment in an action growing out of the alleged negligent operation of automobiles resulting in a collision and death.

The chief issue on appeal is whether there remained a genuine issue as to any material fact. With this issue in mind we state the facts which may be gleaned from the pleadings.

On June 21, 1964, at about 12:10 A. M., the defendant, George W. Turley, was driving a 1958 Ford automobile on Langdon Lane about four miles south of Pittsburg in Crawford County, Kansas. Langdon Lane, which was formerly U. S. Highway 69, is a blacktop

public highway and is straight and level for several miles from the point involved in this controversy.

The Ford automobile being driven by Turley was towing a 1955 Chevrolet which was equipped for drag racing. The Chevrolet was being steered by the defendant, Bob Berry. Joe Lee was riding as a passenger in the Ford.

At the time and place above mentioned, Gary Duane Secrist, while driving a Chevrolet Corvette in a southerly direction, overtook and collided with the Chevrolet from the rear. As a result of the collision, Patricia Elaine Hughes, a passenger in the Corvette, was thrown on to the east side of the highway and seriously injured. Some ten or fifteen minutes later while Gary, who had been administering to Patricia, was attempting to remove her from the highway or shield her with his body, a Dodge pick-up truck driven by Percy C. Montee toward the north, struck and killed them both.

The parents of Gary filed this action for damages as a result of his death. The petition specifically alleged:

". . . That at said time and place the defendants, and each of them, were negligent as hereinafter alleged and the combined and concurring negligence of the defendants, and each of them, proximately and directly caused the death of plaintiffs said son and plaintiffs damages as hereinafter set forth.

"4. That at said time and place the defendants, and each of them, failed to use ordinary care and were negligent in the following respects, to-wit:

"a. The defendants Berry, Turley and Lee negligently failed to have said towed Chevrolet equipped with a red tail light visible for 500 feet to the rear."

The defendant, Montee, was charged with negligence in numerous particulars. The petition alleged a joint enterprise on the part of the defendants other than Montee. The petition further alleged:

"That as the proximate and direct result of the combined and concurring negligence of the defendants, and each of them, plaintiffs said son was injured and killed as aforesaid. . . ."

The prayer was for statutory damages in the amount of $25,000 plus funeral expenses.

The defendants, other than Montee, filed separate answers in which they denied negligence; denied that the original collision caused serious injury to Patricia; denied negligence which was the proximate and direct cause of Gary's death; denied that they were engaged in a joint adventure, and alleged as a special defense:

"That the loss and damages which plaintiff sustained were contributed to by and caused by the carelessness, negligence and want of attention or omission on the part of the decedent, Gary Duane Secrist."

The record does not disclose an answer by the defendant, Montee, but it does appear that in answer to an interrogatory plaintiff admitted that:

". . . A Covenant Not To Sue was entered into by plaintiffs and Percee C. Montee, November 27, 1964, and that defendant's insurance company paid plaintiffs the sum of $9,000.00. This Covenant Not To Sue was as to defendant Percy C. Montee only."

The defendants, other than Montee, filed a motion for summary judgment based on the contention that the pleadings, answers to interrogatories and affidavits on file show that there is no genuine issue as to any material fact, and that the defendants are entitled to a judgment as a matter of law.

The trial court entered summary judgment for defendants.

The plaintiffs have appealed.

The appellants contend that it was error to sustain the motion for summary judgment for the reason there existed a genuine disputed issue of fact as to the negligence of the defendants and whether such negligence concurred to cause the death of plaintiffs' son, Gary.

We are forced to agree with appellants' contention. Considering first the legal approach to the propriety of the summary judgment, we are forced to conclude that there remains a genuine issue as to material facts. A summary judgment may not be issued unless ". . . the pleadings, dispositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (K. S. A. 60-256 [c].)

This court has had occasion since K. S. A. 60-256 (c) went into effect to pass on the purpose and propriety of the use of motions for summary judgments.

In *Herl v. State Bank of Parsons,* 195 Kan. 35, 403 P. 2d 110, we announced a few basic principles which should govern the use of motions for summary judgments. In *Brick v. City of Wichita,* 195 Kan. 206, 403 P. 2d 964, the matter was quite thoroughly treated in a well written opinion. In the above cases the judgments granting the motions for summary judgment were reversed on the ground there remained a genuine issue as to a material fact. In *Hartman v. Stumbo,* 195 Kan. 634, 408 P. 2d 693, and also in *Board of Satanta v. Grant County Planning Board,* 195 Kan. 640, 408 P. 2d 655, we held that the record left no genuine issue as to a material fact and

that the moving party was entitled to judgment as a matter of law. These cases would indicate that the propriety of a summary judgment must depend on the application of the clear provisions of the statute to the facts and circumstances of each particular case.

The statement of certain general principles applicable to the specific issues in this case may aid in the future application of the statute. However, care will be taken to stay close to the provisions of the statute itself which are quite clear as to procedure and standards to be applied in passing on such motions. An attempt to apply and follow the multitude of cases considering the federal or similar state rules may cause a court to be governed more by aphorisms announced in the opinions than by the unambiguous provisions of the statute.

The purpose of the rule is to obviate delay where there is no real issue of fact. It should do much to eliminate nuisance litigation and save time and expense. However, a summary judgment should never be granted for the single purpose of saving the time and expense of a trial, or be used for the purpose of depriving litigants of a jury trial. The manifest purpose of the rule is to eliminate sham claims which might otherwise cause needless and time consuming litigation.

In the final analysis a court should not determine the factual issues on a motion for summary judgment but should search the record for the purpose of determining whether a factual issue exists. If there is a reasonable doubt as to the existence of a material fact a motion for summary judgment will not lie. No matter how the explanation of the rule is phrased we always return to the language of the rule, there must be left "no genuine issue of any material fact."

The proper application of the rule leaves but two rather simple questions for determination, *i. e.*, what is a "genuine issue" and what is a "material fact?" The answer as to what constitutes a "genuine issue as to any material fact" appears to account for most of the voluminous opinions on the question.

It may be said that an issue of fact is not genuine unless it has legal controlling force as to a controlling issue. A feigned or imaginary issue is not a genuine issue. A disputed question of fact which is immaterial to the issues does not preclude summary judgment. If the disputed fact, however resolved, could not affect the judgment, it does not present a genuine issue of a material fact.

It has been said that before summary judgment is granted the court must be convinced that the issue is not genuine, or that there are only immaterial or imaginary factual issues.

It would serve no useful purpose to cite the numerous cases touching on the rules above set forth as pronounced by the federal courts and the courts of our sister states, many of which are not in harmony. Those wishing to research the question further than the Kansas cases cited will find the above rules announced and supported by a collection of cases in 3 Barron and Holtzoff, Federal Practice and Procedure, Summary Judgments, § 1231, *et seq.*, and 3 Vernons Kansas Statutes Annotated, § 60-256.

Considering the facts in the instant case to which the rules announced above are to be applied, we find that definite factual issues were framed by the pleadings, *i. e.*, were the appellees guilty of negligence; was the negligence of appellees the proximate cause of the death of appellants' son, Gary, and was the deceased son guilty of contributory negligence? After the issues were formed by the pleadings the parties started discovery proceedings which resulted in affidavits, answers to interrogatories and a deposition.

Ignoring the discovery evidence in favor of the appellees' position, strong though it may be, we find an affidavit by Don Munsell supporting appellants' contentions, which reads:

"1. That on the night of June 20-21, 1964, at a few minutes after midnight, I was driving south on old Highway 69 south of Pittsburg, Kansas.

"2. At a point two to four miles south of Pittsburg, I overtook from the rear and almost collided with a 1955 Chevrolet coupe.

"3. I avoided a collision by swerving the automobile I was driving sharply toward my left. The car I was driving almost collided with this Chevrolet because there were no lights on the car and I did not see it until I was practically on it. There were no red lights or reflectors showing toward the rear. This 1955 Chevrolet had big drag racing tires on it. I could not tell the color because I only saw it briefly.

"4. Shortly after passing the Chevrolet, I stopped my car on a side road to check the tires and the Chevrolet did not pass me.

"6. This Chevrolet was being towed by another car. The two cars were coupled close together. The other car had lights on it which I saw as I passed."

We have not ignored but find no merit in the attack which appellees make on the affidavit.

We must conclude that the affidavit, although disputed by appellees, presents a genuine issue of a material fact on the question of negligence of the appellees and the contributory negligence of the deceased.

In support of their contention that the deceased was guilty of contributory negligence as a matter of law appellees call our attention to the rule announced in *Wright v. Nat'l Mutual Cas. Co.*, 155 Kan. 728, 129 P. 2d 271, as follows:

"Where a person drives an automobile along a highway on a dark night at such speed that the car cannot be stopped or turned aside within the range of vision of the lights on his car, such person is guilty of negligence as a matter of law." (Syl. 2.)

The above rule, like most others, has its exceptions which are governed by a question of fact. A traveler on the highway at night cannot lay a trap for a fellow traveler and escape liability. In *Briles v. Hurley*, 194 Kan. 414, 399 P. 2d 840, we held:

"Under the facts, conditions and circumstances disclosed in the opinion the operator of a motor vehicle was not guilty of contributory negligence as a matter of law for failure to avoid a harvester-thresher combine proceeding on the wrong side of the highway at night without lights." (Syl. 2.)

In the opinion we stated at page 417:

". . . True there were lights on the tractor but there were no lights on the combine it was pulling and the combine extended over on the wrong side of the highway. The record fails to disclose how appellant's correlation of her speed and ability to stop with her ability to see would have avoided the accident."

Again in *Grisamore, Administratrix v. Atchison, T. & S. F. Rly Co.*, 195 Kan. 16, 403 P. 2d 93, it was held:

"The Supreme Court of Kansas has recognized qualifications or exceptions to the general rule that a driver must be able to stop his car within the clear distance ahead, such as where the rays from headlights are absorbed by the obstructing object; where there is an object blending with the street or general background; where the vision of the approaching motorist was affected by street lights near the obstructing object or on the opposite side of it, or where the obstructing object was on a grade so that the light beams projected under and past it." (Syl. 6. See, also, *Deemer v. Reichart*, 195 Kan. 232, 404 P. 2d 174.)

Appellees suggest:

"It is obvious that appellants cannot begin to carry the burden of their basic element of proof. They simply cannot prove that appellees were negligent in towing a vehicle without a proper taillight. The appellees motion for summary judgment would properly be sustained upon this point alone."

The same contention was made and answered in *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964, where it was held:

"Where a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot

prevail upon a trial, will not justify refusing him his day in court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. It must be shown conclusively that there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law." (Syl. 4.)

Appellants may have assumed a heavy burden in undertaking to establish the allegations of their petition, but they have a right to attempt to carry it.

The appellees stress their contention that their negligence, if any, was too remote to constitute the proximate cause of the death. They suggest that where a negligent act creates a condition which is subsequently acted upon by another unforseeable, independent and distinct agency to produce the injury, the original act is the remote and not the proximate cause of the injury, even though the injury would not have occurred except for the original act.

We have no quarrel with appellees' statement of the law. However, we cannot agree with their assumption that there is no genuine issue of substantial facts on the question in this case. The only facts we have as to the extent of injury to Patricia Hughes, necessitating her remaining on the highway, is a deposition of Lida May White, a nurses aid in St. John's Hospital at Joplin, Missouri, and who arrived at the scene about two minutes after the accident. She testified:

"I went over to the girl, and the boy was talking—trying to reassure her and she said, 'Why did this happen to us.' She complained of her back and shoulders and head all hurting and she had an abrasion on her back and I asked for a blanket to cover her with so she wouldn't go into shock."

We cannot determine at this point whether it was necessary to leave Patricia on the highway for treatment because of appellees' negligence.

As to the negligence of Montee, the nurses aid testified:

"As precautions, we had two cars parked slightly ahead on the west side with their lights on and the two cars—I mean the two cars in the original collision had their lights on and they had a flashing light on the front of their car and then there was a car on the east side that had its lights on and then there were three flagmen on the south there. All of this was to the South of where the boy and girl were.

"The boy and girl were both in the east lane of the pavement.

"After a few minutes, and after we put a blanket over the girl, she had gotten thoroughly calm and the boy and girl were talking to each other.

"As I started back to our car I turned and saw Montee's truck and it was

coming toward—it didn't slow down. It was coming from the south, headed north. It was a pickup truck.

"All of the precautions mentioned before were in place when the Montee pickup truck came along.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"As the Montee pickup truck came through the three flagmen shouted and waved their arms, and one of them had to jump back as the pickup came through to avoid being hit himself. The one that had to jump back was about 60 feet south of the boy and girl and other two were 40 or 50 feet south of the boy and girl.

"There were 10 or 12 people at the scene when the Montee pickup truck came through, and about six cars were south of the boy and girl, with their lights on."

Considering the facts which we have before us in the light most favorable to appellants, as we are bound to do, we cannot say as a matter of law that a reasonable person would not have anticipated that as the result of appellees' negligence which placed Patricia upon the traveled part of the highway where she was being administered to by Gary, that the driver of another vehicle on the highway traveling at a high and reckless rate of speed, without a proper lookout and without proper control, would strike and kill the two children.

In *Gard v. Sherwood Construction Co.*, 194 Kan. 541, 400 P. 2d 995, we held:

"The question of negligence, including the determination of proximate cause, ordinarily rests in the province of the jury, or the court, as the trier of the facts.

"The rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause." (Syl. 2 and 3.)

In 3 Barron and Holtzoff, Federal Practice and Procedure, Summary Judgment, § 1232.1, dealing with the feasibility of summary judgments in negligence cases we find the following statement:

"Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. A study made in one district showed that in 292 negligence cases pending in a particular year, only one motion for summary judgment was made and that was denied. . . ." (p. 106.)

The authors go on to state, and we do not mean to imply otherwise, that there are circumstances in which summary judgment may be rendered in a negligence case.

As the record indicates in this case that there remains a genuine issue as to a material fact, the summary judgment must be reversed and the case remanded to the district court for a trial of the factual issues.

It is so ordered.

APPROVED BY THE COURT.