No. 44,823

SUPREME PETROLEUM, INC., a Corporation, *Appellee*, v. DEAN J. BRIGGS, *Appellant*.

(433 P. 2d 373)

Opinion filed November 13, 1967.

A. D. *Weiskirch*, of Wichita, argued the cause and was on the briefs for the appellant.

*Wayne Coulson*, of Wichita, argued the cause, and *Homes V. Gooing*, and *Paul R. Kitch*, both of Wichita, and *Jack N. Hays* and *James M. Sturdivant*, both of Tulsa, Oklahoma, were with him on the briefs for the appellee.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by defendant (appellant) from a summary judgment in an action to recover $200,000 on a stock subscription contract or in the alternative on a promissory note. The question involved is whether there remained a genuine issue as to any material facts.

The facts as gleaned from the pleadings and developed by depositions and affidavits unfold a narrative of intricate financial maneuvers, the purpose of which may fairly be inferred to have been to inflate or "puff up" the common stock of a corporation to improve its marketability.

Supreme Petroleum, Inc., plaintiff (appellee), hereafter referred to as plaintiff or Supreme, is successor to the Dean J. Briggs Oil Development, Inc., referred to hereafter as Briggs Oil. In plaintiff's petition it is alleged that Supreme is the same corporation as Briggs Oil, its name having been changed in the manner provided by law.

The filing date of the various pleadings is not shown in the record

although required by Rule No. 6(g) (Rules of the Supreme Court, 197 Kan. LXII). Such omission has added to the burden of this court in establishing. the chronology of the complex proceedings involved.

A petition was filed, presumably in 1962, in which Supreme pleads two causes of action in the alternative against defendant Briggs. The first cause of action is based on an alleged contract beween Briggs and Briggs Oil. Supreme claims there is $200,000 due it from Briggs for the issuance and delivery of 1000 shares of stock in Briggs Oil. In its second cause of action Supreme seeks judgment in the alternative on a $200,000 promissory note of Briggs payable to one Harold P. W. Wright.

Supreme alleges that Dominion Leaseholds Oil Co. Inc., (referred to hereafter as Dominion), became the owner of all of plaintiff's (Briggs Oil—Supreme) outstanding capital and that as a part of the same transaction, Supreme advanced a check for $200,000 to Dominion which advanced a check in like amount to Wright who advanced a check in like amount to Briggs who gave to Wright the promissory note in question in the amount of $200,000 payable April 12, 1962, with interest at the rate of 6% per annum. Supreme further alleges it became the owner and holder of the note by way of endorsements and without recourse from Wright (who became president and managing director of Supreme) through Dominion Inc., of which Wright was also president, then to plaintiff Supreme.

For his answer to Supreme's first cause of action Briggs pleads payment on the contract by his personal check payable to Briggs Oil in the amount of $200,000 and dated April 12, 1960. A copy of the check is attached to the answer. In his answer to Supreme's second cause of action Briggs pleads that the promissory note was made as an accommodation to Wright without consideration, with the understanding and agreement with Wright that the note would not be negotiated and that Wright would not attempt to collect the note. A copy of the alleged agreement is attached to the answer and reads as follows:

"EXHIBIT 'B'

"April 12/60

"I will hold your note in the amount of $200,000.00, not to be deposited. You do not owe me this money, and I will not attempt to collect it.

"/s/ H. P. Wright

"WITNESS: J. Frame."

Frame was a business associate of Wright and Briggs, and also

owned or controlled the Humber Investment Corporation. It appears from the record that Frame, Wright and Briggs concocted the plan of financial intrigue which resulted in this litigation.

Briggs further alleges that Wright agreed to cancel and return the note but has failed to do so. This allegation was stricken from the answer on the motion of Supreme. Briggs claims error in this regard. Supreme argues the allegation was properly stricken because it did not constitute a defense as against Supreme. We believe that at this stage of the litigation the allegation should not have been stricken in view of its connection with other allegations in the answer as to the relationship of Wright to Supreme, which will be discussed in the course of this opinion. Briggs further pleads in his answer as follows:

"Further answering defendant alleges that Harold P. Wright at the time of the subsequent endorsements of said note to the corporations named in plaintiff's petition was an officer and director of said corporations receiving said note by endorsements and said recipient corporations were not purchasers for value of said note in due course and knew of the agreement in writing that Wright had made on April 12, 1960, hereinabove referred to as defendant's Exhibit B."

In its reply to Briggs' answer Supreme specifically denies that the agreement and understanding between Wright and Briggs as to the collection of the note relates to the note sued upon and attached to the petition.

At this point we pause to note that on the face of Supreme's reply to Briggs's answer a question of fact arises, i. e., did the agreement relate to the note sued upon.

The trial court's order on Supreme's motion to strike was entered on September 30, 1963. Subsequently the reply was filed. Thereafter, it appears that nothing took place in this litigation until pretrial proceedings were commenced on February 26, 1965. During 1965 depositions and affidavits were filed by Supreme and, on June 29, 1966, the trial court sustained Supreme's motion for summary judgment.

Before proceeding to an examination of the propriety of the summary judgment we must note at the outset that as against a motion for summary judgment, pleadings are to be liberally construed in favor of the party against whom the motion is directed. (*Price, Administrator v. Holmes,* 198 Kan. 100, 422 P. 2d 976.)

On the motion for summary judgment, in addition to the pleadings and attached exhibits, several depositions and affidavits, secured by

Supreme, were before the trial court. In the deposition of Hugh Hutton, president of the First National Bank of Braman, Oklahoma, the bank ledger sheets of the accounts of Briggs and Helen B. Briggs, escrow agent, were introduced and pertinent entries explained. The deposition of Briggs disclosed to some extent the perplexing labyrinth of transactions between the parties which brought about this litigation. By the affidavits of C. A. Whitney, Jr. and Gerald Nelson, officials of two other banks, the ledger sheets of the accounts of Briggs Oil and Dominion, respectively, were presented. The account ledgers referred to reflect the deposits and withdrawals of the $200,000 item as it wended its circuitous route. The affidavit (date not shown) of W. S. Wallis, who is identified as president of Supreme when the affidavit was made, sets out the minutes of three meetings of the board of directors of Supreme and several journal entry items from the company's account books. Briggs filed no counter-affidavits, however, in his deposition he was cross-examined at length by his own counsel.

The trial court wrote a memorandum of its decision, pertinent parts of which were set out in the journal entry of judgment.

It appears the trial court based its conclusion as to the first cause of action on the premise that even though Briggs delivered his personal check, dated April 12, 1960, for $200,000 to Briggs Oil it did not constitute a valid payment since it represented $200,000 put into the circuit of transactions by Supreme in the first instance. However, the trial court then goes on to say that Supreme "now holds a note for $200,000.00 executed by defendant instead of an item on its books for accounts receivable in the amount of $200,-000.00." In conclusion the trial court finds "Defendant is indebted to the corporation in the amount of Two Hundred Thousand Dollars ($200,000.00), either under the contract, or on the note." The final conclusion does not appear to be consistent with the findings of the court. If the note has replaced the account receivable item on Supreme's books as found by the trial court, and this is shown by the journal entry items taken from Supreme's ledger submitted in the affidavit of Wallis, then summary judgment, if proper in any respect, should have been rendered only on the promissory note. The accounts receivable item with reference to the subscription contract having been removed as intended by the parties by a "check kiting" arrangement, only the note remains as an asset on the books of Supreme.

At this point it becomes necessary to review further the evidence before the trial court in connection with both causes of action. Briggs owned oil and gas leasehold interests, equipment and other property subject to a mortgage. The properties were located in two counties in Oklahoma. Briggs decided to incorporate for a reason not disclosed. On January 1, 1960, he formed a corporation with himself as sole owner and on January 3, 1960, submitted in writing a proposal to transfer to the newly formed corporation the oil properties mentioned plus $200,000 in cash in return for the issuance to him of 1000 shares of stock in the corporation. The proposal contained other provisions with which we are not concerned. The proposal was accepted by the directors of Briggs Oil. The date of acceptance is not shown. The record is not clear, but there is some indication from the deposition of Briggs that Wright was a participant in the activities of Briggs Oil at this stage.

The next development seems to have taken place at a meeting of Briggs, Wright and Frame in a New York hotel on April 12, 1960. It appears from the record that at this meeting the scheme was fabricated which became the subject of this litigation.

Apparently the parties desired to negotiate a sale of the Briggs Oil stock but were concerned with the appearance of the corporate balance sheet which, as of January 1, 1960, showed as assets—accounts receivable—Dean J. Briggs, $200,000, balanced by items of capital stock in the amount of 10,000 shares and capital surplus of $190,000. A plan was devised to remove the accounts receivable item. The execution of the scheme is reflected in the minutes of a special meeting of the board of directors of Briggs Oil held in Edmonton, Alberta, Canada, April 14, 1960. According to the minutes directors present were Harold P. W. Wright, president and managing director, and a Charles E. Hughes, secretary-treasurer. The absence of Dean J. Briggs, director, was noted. Wright proposed a plan to execute the scheme designed at the New York meeting, and the minutes reflect the following:

"Mr. Wright then reported on a suggestion which had been brought up during a discussion with Mr. John T. Frame of Toronto, whereby it was proposed that Mr. Harold P. W. Wright advance to Mr. Briggs the sum of $200,000 and Mr. Briggs would then pay the company the $200,000 owing by him; and the proposal whereby Dean J. Briggs Oil Development Inc. would loan $200,000 to Dominion Leaseholds Oil Co. Inc. and that

Dominion Leaseholds Oil Co. Inc. would then advance the $200,000 to Mr. Harold P. W. Wright.

"Mr. Wright stated that he did not wish to enter into this chain of events unless it was considered necessary with no other alternative and considered in the best interest of the company and its shareholders.

"After a lengthy discussion on the subject, on a motion duly made, seconded and unanimously carried, IT WAS RESOLVED THAT the company advance to Dominion Leaseholds Oil Co. Inc., the sum of $200,000 provided that Dominion Leaseholds Oil Co. Inc. immediately advance the like sum of $200,000 to Mr. Harold P. W. Wright and that Mr. Harold P. W. Wright advance to Mr. Dean J. Briggs $200,000 subject to Mr. Briggs providing Mr. Wright with a demand note in the principal amount of $200,000 at 6% interest per annum due in April, 1962, further subject to Mr. Briggs immediately paying in full the $200,000 owing by him to the company."

The scheme was carried out substantially as planned. Briggs Oil (Supreme) gave its check drawn by Wright as president on the First National Bank of Wichita, Kansas to Dominion. Dominion in turn advanced its check for $200,000 to Wright, who wrote a check for $200,000 which was deposited in the Helen B. Briggs escrow account in the Frst National Bank, Braman, Oklahoma, from this account $200,000 was transferred to the account of Dean J. Briggs in the same bank. Dean J. Briggs in turn wrote his check to Briggs Oil which was deposited to the Briggs Oil account in the First National Bank of Wichita, Kansas on April 29, 1960, completing the circuit.

The kiting operation through the various banks appears to have been accomplished without a mishap, except as to the First National Bank of Braman, Oklahoma. Here, according to the ledger exhibits and the testimony of Hugh Hutton, president of the bank, ledger entries on both the Helen B. Briggs account and the Dean J. Briggs account reflect a "wash out transaction" by which the debit and credit items, entered the latter part of April, were reversed and then reposted as a deposit in the Helen B. Briggs account as of April 29, 1960, and a withdrawal on May 3, 1960, and in the Dean J. Briggs account as a deposit and check withdrawal both on May 3, 1960. According to the testimony of Hutton the "wash out transaction" became necessary for the protection of the bank because the check from Wright on a Canadian bank had not cleared presumably for the reason that the Dominion Leaseholds check to Wright on the National Bank of Tulsa, Tulsa, Oklahoma, though dated April 12, 1960, had not been cleared to the credit of Wright's account in the Toronto Dominion Bank, Edmonton, Alberta, Canada.

It is obvious, of course, that neither Briggs nor any one else was actually out of pocket because of the complete circuit made by the kited checks. The only material result with which we are concerned is shown in the entries made on the books of Supreme which reflect the effect of the transactions. A final ledger journal entry (No. 271), dated July 31, 1961, shows as an asset of the company, a note of Dean J. Briggs, endorsed without recourse, by Dominion Leaseholds Oil Co. Inc., in settlement of advance of May 31, 1960, by Briggs Oil to Dominion. The end result of the transactions recited shows that the alleged indebtedness of Briggs to Supreme since July 31, 1961, is in the form of a promissory note rather than an account receivable.

A pleader may allege two causes of action in the alternative as to the same subject matter but it is elementary, of course, that he will be limited to a single recovery. (*Price, Administrator v. Holmes,* supra.) It follows the judgment of the trial court must be construed to be on the promissory note in conformity with the findings of the court and under the facts as recited.

We then turn to the second cause of action concerning the note. As we have indicated, Briggs pleads in his answer that the note to Wright was without consideration, made as an accommodation to Wright, with the understanding that Wright would not collect the note, as evidenced by the agreement, signed by Wright and witnessed by Frame.

Supreme admits in its brief that one who takes a note with notice of any defenses takes the note subject to such defenses, and that a corporation is charged with the knowledge of its officers. The law of agency generally imputes the knowledge of agent to his principal.

Counsel for Supreme attempts to evade the effect of the rule by relying on an exception thereto in situations where the conduct and dealing of the agent are such as to raise a clear presumption that he will not communicate to the principal the facts in controversy, as in a case where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the interest of the principal, or for any reason has a motive or interest in concealing the facts from his principal. Counsel has stated in substance the rule as set out in 3 Am. Jur. 2d., Agency, §282, p. 644. However, turning to §284 of the same authority we find a qualification as to the applicability of the exception to the rule

which we believe to be pertinent to the circumstances in the case at hand.

We quote from 3 Am. Jur. 2d, Agency, §284, p. 647:

"A qualification of the rule that the knowledge of an agent engaged in an independent fraudulent act on his own account is not the knowledge of the principal has been made where the agent, although engaged in perpetrating such an act on his own account, is the sole representative of the principal. In such case, if the principal asserts or stands on the transaction, either affirmatively or defensively, or seeks to retain the benefits of the transaction, he is charged with the agent's knowledge. In such circumstances, the agents is said to be the alter ego of his principal, since he is merely the agency through whom the principal himself acted; and this 'sole actor' or 'alter ego' principle has been characterized as an exception to an exception—that is, it is an exception to the 'independent fraudulent act' exception to the general rule that the agent's knowledge will be imputed to the principal—and it brings the governing principal back, full circle, to the imputation of knowledge to the principal."

Recourse to the qualification of the exception to the imputed knowledge rule, as in the case of the applicability of the general rule itself, remains subject to a showing of good faith by the third party seeking protection thereof. (3 Am. Jur. 2d, Agency §286, p. 648.)

Further discussion of the qualification of the applicability of the exception to the imputed knowledge rule, where the agent is sole actor or representative, may be found in 19 Am. Jur. 2d, Corporations, §1266, p. 672. The subject is also examined in 104 A. L. R., Anno., pp. 1246 and 1251; and 61 A. L. R., Anno., pp. 694 and 704.

In the deposition of Briggs and the minutes of the directors' meeting of Supreme we find persuasive evidence that Wright was not only acting as an officer and agent of the principal (Supreme) but for all practical purposes he was the principal immediately prior to and during the entire course of the transactions recited. We note from the record that Wright attended a meeting in New York with Briggs and Frame when the plan was devised on April 12, 1960. According to the minutes of the directors' meeting of Supreme (Briggs Oil) in the company's office in Wichita at 10 a. m., April 14, 1960, Wright was present. On the resignation of Helen B. Briggs as a director Wright was elected to fill the vacancy and later at the same meeting elected president of the company. According to the minutes, a special meeting of the board of directors was held in Edmonton, Alberta, Canada, on April 14, 1960, at the hour of 12 noon. Mr. Harold P. W. Wright, president and managing director, was listed as present. The minutes note the presence of Mr. Charles E. Hughes, secretary-treasury, and the absence of Dean J.

Briggs, director. We note that according to the minutes the meeting in Edmonton convened two hours after the meeting in Wichita and that Wright, astonishingly was at both meetings.

The minutes of another directors' meeting on March 29, 1961, in Edmonton, Alberta, Canada, are set out in the record. The minutes of the last meeting referred to show a resolution was adopted that the company accept the note of Briggs, endorsed by Wright to Dominion. The minutes also read "Mr. Wright fully disclosed his interest in the matter and did not vote on the question." At this time Wright had been president of Supreme for almost a year.

In our examination of the minutes of the directors' three meetings referred to we find evidence indicating that Wright, acting as president and managing director of Supreme, was in fact "sole actor" or "alter ego" of his principal thereby bringing this case within an exception to the exception of the imputation of the knowledge rule above quoted. The question whether or not such evidence is sufficient to establish the point to the satisfaction of a trier of facts is not at issue at this stage of the litigation.

This being the case it cannot be said that no genuine issue as to any material fact remained under the defenses raised by the answer of Briggs.

We are mindful that in applying the summary judgment rule, a question of fact created by allegations, standing alone, is not sufficient to control the application. In discussing the principle in *Meyer, Executor v. Benelli,* 197 Kan. 98, 415 P. 2d 415, we said:

". . . The rule was intended to permit a party to pierce the allegation of facts in his opponent's pleadings by affidavits and discovery, thus controlling the formal issues presented by the pleadings. (Citing cases.)" (pp. 100, 101.)

However, in considering the effect of affidavits and discovery, we are compelled to give to the party, against whom summary judgment is sought, the benefit of all reasonable inferences that may be drawn from the facts under consideration. (*Green v. Kaesler-Allen Lumber Co.,* 197 Kan. 788, 420 P. 2d 1019, and cases cited therein.)

Considering the answer of Briggs within the framework of the rules stated it cannot be said that issues raised by the pleading in question have been so pierced as to absolve conclusively the issues presented. It must be conceded that from the record presented the position of Briggs as to his own good faith is subject to question; and he may have assumed a heavy burden in undertaking to estab-

lish the allegations of his answer but he has a right to carry it. (*Secrist v. Turley*, 196 Kan. 572, 412 P. 2d 976.)

We also take note that Briggs filed no counter-affidavits or depositions. However, in this connection we must consider what was stated in *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964:

"A summary judgment proceeding is not a trial by affidavits, and the parties must always be afforded a trial when there is a good faith dispute over the facts. (*United States v. Kansas Gas and Electric Company*, 287 F. 2d 601 [10th Cir. 1961].) A motion for summary judgment cannot be made a substitute for a trial either before a court or jury, and a plaintiff who states a cause of action which entitles him to a trial by jury is entitled to have his case tried in that way and cannot be compelled to submit his evidence in the form of affidavits in resistance to a motion for summary judgment and have the issues determined by such motion. (*United States v. Broderick*, 59 F. Supp. 189 [D. C. Kan. 1945].)" (p. 211.)

The same principle must be applied to a defendant who states a defense in his answer.

Since the enactment of K. S. A. 60-256(*c*) this court has consistently adhered to the rule that a motion for summary judgment under the provisions thereof is to be sustained only where the record shows there is no genuine issue as to any material fact. (*Wilson v. Deer*, 197 Kan. 171, 415 P. 2d 289, *Secrist v. Turley*, supra; *Brick v. City of Wichita*, supra.)

In commenting on the rule stated in *Secrist* we said:

"In the final analysis a court should not determine the factual issues on a motion for summary judgment but should search the record for the purpose of determining whether a factual issue exists. . . ." (p. 575.)

From the record before us we find the defendant is entitled to a trial on the issues (1) whether the note sued on was given for consideration or as an accommodation; (2) whether the agreement between Briggs and Wright relates to the note in question; and (3), if so, was it given under such circumstances as to amount to a release of the liability of Briggs to Wright and the issue included therein as to whether the relationship of Wright and Supreme was such that Wright's knowledge amounted to knowledge by Supreme.

In accordance with what has been said the judgment must be reversed with directions to overrule the plaintiff's motion for summary judgment. It is so ordered.