**AMERICAN NATIONAL BANK OF POW-ELL, Wyoming, Appellant (Defendant and Third Party Plaintiff below),**

v.

**FOODBASKET, a partnership, Appellee (Plaintiff below).**

No. 4031.

Supreme Court of Wyoming.

Feb. 1, 1972.

Ross D. Copenhaver, of Copenhaver & Castberg, Powell, for appellant.

Joseph E. Darrah, Powell, for appellee.

Before McINTYRE, C. J., and PARKER and McEWAN, JJ.

McINTYRE, Chief Justice.

Foodbasket, a partnership, sued American National Bank of Powell, Wyoming, alleging two checks had been wrongfully returned by it for "insufficient funds"; and that the checks were charged back to plaintiff. Liability was claimed against the defendant bank under the provisions of § 34–4–302, W.S.1957, 1971 Cum.Supp.

From a summary judgment in favor of plaintiff and against the bank, defendant has appealed.

Before applying the particular facts of this case to § 34–4–302, we think it will be helpful to briefly analyze some of the principles involved. Suppose A gives B a check and has adequate funds in the bank to cover the check. If the bank unreasonably delays action on the check after it has come to the bank, and if the delay proves to be the cause of permitting the funds to be attached so that they are lost to the check payee (B), it might be proper to make the bank accountable to B for the amount of his check.

However, if A had no money in the bank at any time, the bank should not be accountable to B unless its delay in acting on the check causes some loss to B which B would not otherwise have suffered. In other words, the bank's delay would not be sufficient to cause the bank to become liable to B for what A had swindled B out of —if B is left in no worse position by the bank's delay.

If we were to interpret § 34–4–302 as having the effect of transferring to the bank liability for A's obligation to B, when the bank's delay did not leave B in any worse position, we would be confronted with the question of whether the section was constitutional. Not only would such a statute result in a gross miscarriage of justice, but it would probably be a denial of due process of law.

In the case we are concerned with, Pat McPherson was an employee of the plaintiff, Foodbasket. She had worked part time for several years, earning approximately $54 a week. Her duties included checking the cash receipts and making deposits for the firm. During the week when she was to quit working, she prepared two separate deposits. Both deposits were made on Friday, the last day of her employment.

One of the two deposits included a check on the defendant bank in the amount of $2,900. It was payable to Foodbasket and drawn by Pat McPherson. She had endorsed the check for Foodbasket. The other deposit included a check on the defendant bank in the amount of $5,500. It also was payable to Foodbasket and drawn by Pat McPherson. She had likewise endorsed it for Foodbasket. The deposits were made at the First National Bank in Powell.

Pat McPherson had never had on deposit at any time, with American National Bank, sufficient money to cover either of the checks included in the aforementioned de-

posits. The checks were at least one day belatedly returned for "insufficient funds." According to the explanation of counsel for appellant, considering the method of doing business between the First National Bank and American National Bank of Powell and the effect of a Labor Day holiday, American National Bank delayed one day longer than it should have in returning the checks. Counsel for appellee has not shown that this explanation is incorrect. However, it would not matter if more days were involved.

While Foodbasket has concerned itself with what the Uniform Commercial Code makes the payor bank accountable for, it has failed to consider its own accountability to the payor bank as an endorser and guarantor of the checks involved.

■ It is of course common knowledge that an endorser of a check or note guarantees the instrument if it is not endorsed without recourse. In keeping with this principle, § 34-4-207(2), W.S.1957, 1971 Cum.Supp., makes it clear a transferer of an item engages that upon dishonor he will take up the item. Subsection (4) of the same section indicates, where an unreasonable delay is involved, the guarantor is discharged to the extent of any loss caused by the delay.

This principle is in keeping with the hypothesis we related above concerning a check given by A to B. With respect to the checks involved in this case, Foodbasket was left in no worse position on account of the one-day delay of defendant. Plaintiff had already been cheated by its own employee and there is no showing that the delay of American National Bank caused it to be in any worse position.

Since, as we have heretofore indicated, liability against American National Bank is claimed under the provisions of § 34-4-302, we will examine this section in some detail.

Its provisions, insofar as pertinent to our decision, are these:

"In the absence of a valid defense such as breach of a presentment warranty (subsection (1) of section 34-4-207), a settlement effected or the like, if an item is presented on and received by a payor bank the bank is accountable for the amount of

(a) a demand item * * * whether properly payable or not if the bank, in any case where it is not also the depositary bank, retains the item beyond midnight of the banking day of receipt without settling for it or * * * does not pay or return the item or send notice of dishonor until after its midnight deadline * * *."

It is apparent in the first phrase of the foregoing section that it applies only in the "absence of a valid defense." Of course, the reference to a valid defense is followed with two "such as" clauses, but we need not worry about this because one of the defenses expressly mentioned is breach of a presentment warranty; and American National Bank had such a defense—or at least an equivalent defense.

It is quite clear from § 34-4-207(1) (a) of the code that Foodbasket (by reason of its endorsement of the McPherson checks) warranted it had good title to the items. It did not and could not have good title to checks as worthless as these checks were and therefore its warranty of good title was breached.

■ The term "good title" as used in § 34-4-207(1) (a) is not specifically defined in the commercial code. However, in connection with conveyances of real property the term has often been defined as a marketable title; one free from reasonable doubt; and one that can be readily sold to a reasonable purchaser.[1] There is no reason why the same definition should not apply when we speak of good title to a negotiable instrument.

---

1. See the cases referred to in this connection in 18A Words and Phrases, "Good Title," p. 208, and 1971 Cum.Supp., p. 33.

Title to the McPherson checks was not free from doubt and it was not marketable because Pat McPherson knew money was not in the bank to cover such checks. This knowledge was chargeable to the partners of Foodbasket on the theory of constructive or imputed knowledge.

The rule applicable to such a situation is that the principal is chargeable with, and bound by, the knowledge or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends; but notice to an agent acting outside the scope of his authority is not notice to the principal unless the party relying thereon has reasonable ground to believe the agent is acting within the scope of his authority.[2]

It is clear that the regular duties of Pat McPherson included checking the cash receipts and making deposits for the firm. Therefore, she was acting within the scope of her authority when she endorsed the checks here involved for Foodbasket and when she included such checks in deposits for Foodbasket. Thus, Foodbasket had constructive knowledge that these checks were not good. Its title thereto was not a good title.

A consideration of § 34–3–511(2) (b), W.S.1957, 1971 Cum.Supp., leads to the same result. It states notice or protest is entirely excused when the party to be charged "has no reason to expect or right to require" that the instrument be accepted or paid. Because of its endorsement and warranty, Foodbasket was one of the parties to be charged back when payment was refused. Indeed, the basis of Foodbasket's complaint is that the checks were charged back to it when the checks were returned for insufficient funds.

Inasmuch as the checks were worthless and knowledge of that fact was imputed to Foodbasket, because Pat McPherson was its employee and agent, Foodbasket had no reason to expect the checks to be accepted or paid by defendant. It also had no right to require such payment by American National Bank.

In light of what we have said, American National Bank clearly had a valid defense against the McPherson checks. Also, Foodbasket had no reason to expect or right to require that the checks be accepted or paid by American National Bank. In the absence of any showing that Foodbasket lost anything or was left in a worse position by reason of the bank's delay in rejecting the checks, Foodbasket had no right of recovery against American National Bank.

The record presented to us indicates Pat McPherson was made a third party defendant. There is nothing in the record, however, to indicate what judgment, if any, has been entered against her. Nothing in this opinion shall in any event be construed as barring any right of recovery Foodbasket may have against Pat McPherson.

Reversed and remanded with instructions to vacate the judgment for plaintiff and to enter summary judgment for the defendant.

2. 3 Am.Jur.2d Agency § 273, pp. 635–637; General Factors, Inc. v. Beck, 99 Ariz. 337, 409 P.2d 40, 43; Rocky Mountain Fire & Casualty Company v. Rose, 62 Wash.2d 896, 385 P.2d 45, 49, 1 A.L.R. 3d 876; In re Milliman's Estate, 101 Ariz. 54, 415 P.2d 877, 888; and Supreme Petroleum, Inc. v. Briggs, 199 Kan. 669, 433 P.2d 373, 378. See also 3 C.J.S. Agency § 262, p. 194, and cases listed in the original volume and cumulative supplement under note 68.